[L.A. No. 30224. In Bank. May 23, 1974.]

PETER J. PITCHESS, as Sheriff, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CAESAR ECHEVERIA, Real Party in Interest.

**COUNSEL**

John H. Larson, County Counsel, Robert C. Lynch, Frederick R. Bennett and Jeffrey H. Nelson, Deputy County Counsel, for Petitioner.

Thomas M. O'Connor, City Attorney (City and County of San Francisco), Philip S. Ward, Deputy City Attorney, Edward A. Goggin, City Attorney (Oakland), Mark B. Shragge, Deputy City Attorney, Royce A. Fincher, Jr., Frank G. Carrington, Wayne W. Schmidt, Paul Keller, Glen R. Murphy and Jeremiah F. O'Shea, Jr., as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Miguel F. Garcia for Real Party in Interest.

Richard S. Buckley, Public Defender, Dennis A. Fischer and Edward A. Rucker, Deputy Public Defender, Andrew K. Dolan, Leon Letwin and Richard Wasserstrom as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MOSK, J.**—Petitioner, Sheriff of Los Angeles County, seeks a writ of mandate to compel respondent superior court to quash its subpoena duces tecum requiring the production of certain documents sought by Caesar Echeveria, real party in interest and defendant in a pending trial for multiple counts of battery (Pen. Code, §§ 242, 243). Petitioner contends the discovery at issue should not have been granted because the motion to discover is procedurally defective and the requested information is not subject to discovery. We conclude the trial court did not abuse its discretion in ordering discovery and therefore deny the writ.

Defendant, together with others, was charged in March 1972 with committing battery against four deputy sheriffs. Soon thereafter one charge was dismissed, and defendant now awaits trial on the remaining three. Defendant asserts he intends at trial to establish that he acted in self-defense in response to the use of excessive force by the deputy sheriffs. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 356 [74 Cal.Rptr. 713, 450 P.2d 33].) To that end, he sought to discover evidence of the complaining witnesses' propensity for violence. Specifically, he moved for the production of records of several investigations conducted by the administrative services bureau, a sheriff's department internal unit which inquires into citizen complaints of official misconduct. The investigations involved accusations by various members of the public that the deputies allegedly attacked had themselves used excessive force on previous occasions. The motion was granted by the trial court, and the prosecution was ordered to secure the records from the sheriff. The commander of the administrative services bureau, however, refused to cooperate, whereupon defendant obtained a subpoena duces tecum directing the sheriff to produce the information. The sheriff declined to do so, and unsuccessfully moved to quash the subpoena. Now he seeks mandate.

At the threshold we observe that the case comes to us by a somewhat convoluted route. The trial court ordered the prosecution to obtain the records from the sheriff. When the sheriff refused to produce the informa-

tion, the prosecutor should have invoked process of the court; instead, the burden of so moving was imposed upon the defendant, here the real party in interest. Nevertheless the trial court found the burden had been met and therefore issued a subpoena duces tecum, the sheriff moved to quash, and the motion was denied. Thus the matter is now in a justiciable posture on the sheriff's request for mandate. On the motion to quash, and petition for mandate after denial of the motion, the burden shifts to the moving party, the sheriff, to demonstrate an abuse of discretion by the trial court. As will appear we find he has not met that burden.

Petitioner initially urges that the affidavits in support of the subpoena duces tecum are insufficient to justify discovery because they fail to demonstrate "good cause" with adequate specificity as required by Code of Civil Procedure sections 1985 and 2036.[1] The contention is premised on the erroneous assumption that the statutory provisions governing discovery in civil actions apply to criminal proceedings.

Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation. (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176, fn. 12 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R. 3d 1416]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) pp. 847-848.) A defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. (*Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353]; *People* v. *Terry* (1962) 57 Cal.2d 538, 560-561 [21 Cal.Rptr. 185, 370 P.2d 985]; *Powell* v. *Superior Court* (1957) 48 Cal.2d 704, 708 [312 P.2d 698]; *Vetter* v. *Superior Court* (1961) 189 Cal.App.2d 132, 134 [10 Cal.Rptr. 890].) Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. (*Hill* v. *Superior Court* (1974) *supra*, 10 Cal.3d at p. 816; *Cash* v. *Superior Court* (1959)

---

[1]Section 1985 provides in part: "An application before trial for a subpoena duces tecum shall be, or contain, an affidavit showing good cause for the production of the matters and things described in such subpoena and shall specify the exact matters or things desired to be produced, shall set forth in full detail the materiality thereof to the issues involved in the case, and shall state that the witness has the desired matters or things in his possession or under his control."

Section 2036, subdivision (a), provides: "A party required to show 'good cause' to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) or of Article 3 (commencing with Section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and mere proof of the relevance of the information sought to the subject matter of the action shall not be sufficient."

53 Cal.2d 72, 75 [346 P.2d 407]; *Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d at pp. 707, 709; *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) *supra,* pp. 881-882.)

In accordance with these principles, it has long been held that civil discovery procedure has no relevance to criminal prosecutions. (*Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d 704, 707-708; *Yannacone* v. *Municipal Court* (1963) 222 Cal.App.2d 72, 74-75 [34 Cal.Rptr. 838]; *Clark* v. *Superior Court* (1961) 190 Cal.App.2d 739, 742-743 [12 Cal.Rptr. 191]; *People* v. *Wilkins* (1955) 135 Cal.App.2d 371, 377-378 [287 P.2d 555]; *People* v. *Ratten* (1940) 39 Cal.App.2d 267, 271 [102 P.2d 1097]; *Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320].) Chief Justice Traynor reaffirmed this dichotomy in *Shively* v. *Stewart* (1966) 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431], when he wrote: "We are committed to the wisdom of discovery, by statute in civil cases (Code Civ. Proc., §§ 2016-2036), and by common law in criminal cases." Legislative silence on criminal discovery, he noted, means that it has left to the courts the adaptation of common law concepts. More recently this court in *Hill* unequivocally declared that criminal discovery is an inherent power of the court "in the absence of legislation" (10 Cal.3d at p. 816). While civil discovery in general is as old as our Code of Civil Procedure, Witkin observes that the "California law of discovery in criminal cases is a creation of the courts dating back only a few years." (Witkin, Cal. Criminal Procedure (1963) p. 265.)

Nothing in the legislative history of the current version of the civil discovery act (Code Civ. Proc., § 2016 et seq.) discloses an intention to expand its province to incorporate criminal matters. (See Committee on Administration of Justice, *Report on Discovery* (1956) 31 State Bar J. 204-209, 227; Comment, *Depositions, Proceedings to Perpetuate Testimony, Interrogatories to Parties: The Federal Rules and the California Law* (1956) 44 Cal.L.Rev. 909.) Indeed, civil discovery in California is now virtually co-extensive with the federal practice, which clearly does not embrace criminal proceedings. (See Fed. Rules Crim. Proc.)

Were a court to require strict adherence to the provisions of Code of Civil Procedure sections 1985 and 2036, subdivision (a), it is likely that Fifth Amendment problems would develop in many instances. ██ Therefore, in contrast to the formal requirements for civil discovery, an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. (*Cash* v. *Superior Court* (1959) *supra,* 53 Cal.2d 72, 75; *Powell*

v. *Superior Court* (1957) *supra,* 48 Cal.2d 704, 707.) The requisite showing may be satisfied by general allegations which establish some cause for discovery other than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." (*People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964]; see also *Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26]; *Ballard* v. *Superior Court* (1966) *supra,* 64 Cal.2d 159, 167; *People* v. *Terry* (1962) 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Lane* (1961) 56 Cal.2d 773, 785-786 [16 Cal.Rptr. 801, 366 P.2d 57]; *People* v. *Valdez* (1962) 203 Cal.App.2d 559, 565 [21 Cal.Rptr. 764]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) *supra,* pp. 883-886.)

In the case at bar, the affidavits filed by defendant are clearly sufficient to justify discovery under the foregoing standard. In the affidavits defendant indicates that two named persons who filed complaints concerning the deputy sheriffs here involved are unavailable for interview. Accordingly, their prior statements to the sheriff's investigators are necessary for effective cross-examination of the deputies at trial. (*People* v. *Shipp* (1963) 59 Cal.2d 845, 849 [31 Cal.Rptr. 457, 382 P.2d 577].) Defendant further states that two additional named witnesses who had previously reported misconduct on the part of the deputies are available as witnesses, but cannot recall the details of the events which transpired some time ago. The sheriff's records, therefore, are necessary to refresh their recollection. (*Cordry* v. *Superior Court* (1958) 161 Cal.App.2d 267, 268 [326 P.2d 222].) Finally, defendant alleges that the disciplinary records are necessary as character evidence of the deputies' tendency to violence in support of his theory of self-defense. Such evidence is unquestionably relevant and admissible under Evidence Code section 1103.[2]

On the face of the affidavits it is apparent that defendant could not "readily obtain the information through his own efforts." (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L.Rev. 228, 244; see also *Hill* v. *Superior Court* (1974) *supra,* 10 Cal.3d 812, 819; *Ballard* v. *Superior Court* (1966) *supra,* 64 Cal.2d 159, 167.) Though defendant was able to determine the identity of particular individuals who lodged complaints against deputy sheriffs, he cannot be held responsible for their

[2]Section 1103 provides: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is: (a) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character. (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

unavailability or lack of memory, and he has no access to the sheriff's investigative records. Furthermore, the information which defendant seeks may have considerable significance to the preparation of his defense, and the documents have been requested with adequate specificity to preclude the possibility that defendant is engaging in a "fishing expedition." We therefore conclude that defendant demonstrated sufficient good cause under the appropriate standards of criminal procedure, as developed in case authority, to warrant the trial court in compelling discovery.

 Even upon a showing of good cause, however, the right of an accused to obtain discovery is not absolute. "In criminal cases, the court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest." (*Joe Z.* v. *Superior Court* (1970) *supra,* 3 Cal.3d 797, 804; see also *Hill* v. *Superior Court* (1974) *supra,* 10 Cal.3d 812, 817; *People* v. *Lopez* (1963) 60 Cal.2d 223, 246-247 [32 Cal.Rptr. 424, 384 P.2d 16]; *Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]; *Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d 704, 707-708; *People* v. *Riser* (1956) *supra,* 47 Cal.2d 566, 586.) In the case before us, petitioner claims the information compiled by the administrative services bureau is not subject to discovery because of the asserted governmental interest in preserving its confidentiality.[3]

Evidence Code section 1040 now provides public entities with a formal privilege to refuse to divulge official information when the need to maintain its secrecy is greater than the need for disclosure in the interests of justice.[4] The privilege is conditional: "The judge must determine in each

---

[3]We note parenthetically that the petitioner himself does not always preserve confidentiality. In an affidavit Robert D. Campbell, captain assigned to the administrative division of the sheriff's department, conceded that the "purpose of these investigations is to enable the Department to ascertain the existence or non-existence of misconduct on the part of Sheriff's deputies . . . . The final results of these investigations and the information acquired from them are used in appropriate cases by the Office of the County Counsel as attorneys for the County of Los Angeles in connection with defending civil suits arising out of the incident investigated."

[4]Section 1040 provides: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the

instance the consequences to the public of disclosure and the consequences to the litigant of nondisclosure and then decide which outweighs the other." (Assem. Com. on Judiciary, comment to Evid. Code, § 1040.)

The privilege attaching to official information clearly encompasses the documents which defendant wishes to discover. The records of the sheriff's department were compiled on the basis of statements made in confidence to members of the administrative services bureau, and investigations conducted pursuant thereto. Nevertheless, at the hearing below and in the presentation to this court petitioner expressly refrained from invoking the governmental protections afforded him by the privilege. He candidly explains that he did so in order to avert the potentially adverse consequences which may accompany an exercise of official privilege, i.e., a dismissal of the charges or a directed verdict against the prosecution on the issue to which the excluded material relates. (See *United States* v. *Reynolds* (1953) 345 U.S. 1, 12 [97 L.Ed. 727, 735, 73 S.Ct. 528, 32 A.L.R.2d 382]; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 842-843 [83 Cal.Rptr. 369, 463 P.2d 721]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 167-168 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *McShann* (1958) 50 Cal.2d 802, 806-811 [330 P.2d 33]; *People* v. *Superior Court (Biggs)* (1971) 19 Cal.App.3d 522, 533 [97 Cal.Rptr. 118]; Evid. Code, § 1042, subd. (a).)

In lieu of the privilege, petitioner relies on the above-cited California cases which recognize the discretion of the trial court to prevent the disclosure of governmental information when the public interest so requires. However, in the wake of the enactment of the Evidence Code in 1967, no such common law privilege of confidentiality currently exists.[5]

The Legislature has declared that the Evidence Code generally "establishes the law of this state respecting the subject to which it relates." (Evid. Code, § 2.) The statutory scheme is regarded as the sole and authoritative arbiter of all matters which come within its purview. With respect to the subject of privileges, the code states specifically that "[t]he provisions of Division 8 (commencing with Section 900) relating to privileges shall gov-

---

necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

[5]Petitioner's rationale for not claiming the statutory privilege is ironic in view of the fact that the trial court is equally compelled to dismiss a prosecution when material evidence is withheld from a defendant on a common law claim of governmental confidentiality. This doctrine is made clear in *Reynolds, Price, Honore,* and *McShann,* among numerous other authorities.

ern any claim of privilege made after December 31, 1966." (Evid. Code, § 12, subd. (c).) Thus, the Legislature has codified, revised, or supplanted any privileges previously available at common law: the courts are no longer free to modify existing privileges or to create new privileges. (See generally McDonough, *California Evidence Code: A Précis* (1966) 18 Hastings L.J. 89.)

Evidence Code section 1040, therefore, represents the exclusive means by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy. Evidence Code section 1042, subdivision (a), in turn, codifies the due process demand recognized by the United States Supreme Court that the prosecution cannot commence criminal proceedings "and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."[6] (*United States* v. *Reynolds* (1953) *supra*, 345 U.S. 1, 12; also see *Jencks* v. *United States* (1957) 353 U.S. 657, 672 [1 L.Ed.2d 1103, 1114, 77 S.Ct. 1007]; *Roviaro* v. *United States* (1957) 353 U.S. 53, 60-61 [1 L.Ed.2d 639, 644-645, 77 S.Ct. 623].) In concert, the two provisions create an orderly and fair procedure designed to safeguard the legitimate interests of both the government and criminal defendants. By purporting to rely on the superseded common law rather than the statute, petitioner attempted to avoid the potential liabilities of the statutory scheme, but in so doing waived its benefits as well.

It follows that petitioner is not entitled on the theory asserted to an order quashing the subpoena duces tecum. He may now seek to establish the applicability of the conditional privilege declared in Evidence Code section 1040, but the decision on the propriety of such a motion and its possible attendant consequences under Evidence Code section 1042, subdivision (a), will remain in the sound discretion of the trial court according to the standards hereinabove delineated.

The alternative writ of mandate is discharged and the peremptory writ denied.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[6]Section 1042, subdivision (a), states: "Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the *privileged* information is material."

**CLARK, J.**—I concur, but wish to emphasize that dismissal of the charges is *not* the price of claiming the privilege for official information in the circumstances of this case.

Evidence Code section 1042, subdivision (a), provides that if a claim of privilege is sustained in a criminal proceeding, "the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."¹ As the information sought here is material solely to the issue of use of excessive force on specified previous occasions, sustaining a claim of privilege should only result in a finding of fact adverse to the People on the collateral issue.