Filed 6/7/13  P. v. Papenhausen  CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SCOTT EVERETT PAPENHAUSEN,<br><br>    Defendant and Appellant. | C071602<br><br>(Super. Ct. No. F11-01081) |

A jury convicted defendant Scott Everett Papenhausen of selling or furnishing methamphetamine (Health & Saf. Code, § 11379, subd. (a); count I), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) as a lesser included offense to that charged in count II (possession for sale, Health & Saf. Code, § 11378), and misdemeanor resisting (Pen. Code, § 148, subd. (a)(1)) as a lesser offense to that charged in count III (resisting by means of threat or violence, Pen. Code, § 69).  In connection with count II, the jury found that defendant personally used a deadly or dangerous weapon, to wit, a ceramic lamp (Pen. Code, § 12022, subd. (b)(1)).  In bifurcated proceedings, defendant admitted two prior prison term allegations (Pen. Code, § 667.5,

1

subd. (b)) and a prior drug conviction allegation (Health & Saf. Code, § 11370.2, subd. (c)).

Sentenced to state prison, defendant appeals. He contends counsel rendered ineffective assistance and the trial court abused its discretion in sentencing. We will affirm the judgment. We do find errors in the abstract of judgment which must be corrected. Relevant facts will be recounted in our discussion of defendant's contentions.

I

Defendant contends counsel rendered ineffective assistance at the suppression hearing because he failed to call Vincent Villany to testify that the officers did not have his consent to enter his residence to arrest defendant on a misdemeanor arrest warrant. Had Villany so testified at the suppression hearing, defendant argues that his arrest would have been deemed invalid, the methamphetamine found during the search incident to his arrest would have been suppressed as fruit of the poisonous tree, and the charges would have been dismissed. The People argue defense counsel had a valid tactical reason not to call Villany to testify at the suppression hearing. We conclude that the record is inadequate to evaluate whether counsel's performance was deficient in not calling Villany to testify at the suppression motion.

**Background**

Defendant represented himself at the preliminary hearing on February 1, 2012, when Deputy Sheriff Steve Clark testified that in his presence, Deputy Sheriff Phillip Shannon got permission from the homeowner (Vincent Villany) to enter the house. Deputy Shannon testified at the hearing as well but was not asked about Villany's consent.

Defendant represented himself at arraignment on February 16, 2012. Still representing himself, defendant filed a motion to suppress, challenging his arrest and the seizure of evidence incident to his arrest. On March 9, 2012, defendant requested counsel and the trial court appointed Douglas Prouty.

2

On May 2, 2012, defense counsel filed a *Pitchess*[1] motion attached to which were the reports of Deputies Clark and Shannon. Deputy Clark stated in his report that Villany consented to their entry to arrest defendant and Reatha Mercer on arrest warrants. Deputy Shannon stated in his report that Villany at first did not want them to enter but because defendant had lied to him about outstanding warrants, Villany consented.

At the May 2, 2012, hearing on the *Pitchess* motion and defendant's suppression motion, defense counsel stated that defendant's suppression motion was based on his belief that the officers did not have sufficient cause even with the warrant. Deputy Clark testified that he knew that there was an outstanding warrant for defendant's arrest. On December 26, 2011, the deputy received information from an anonymous informant that defendant was located at a particular residence owned by Villany. Several hours later, Deputies Clark and Shannon, and Reserve Deputy Brian Smith went to the residence and contacted Villany. Villany explained that defendant was on the third floor and gave the officers permission to enter. Reserve Deputy Smith stayed at the back of the house while Deputies Clark and Shannon entered the exterior door to the second story. Deputy Clark announced his presence but received no reply. Deputy Clark proceeded up the stairs to the third floor loft and again announced his presence. Again there was no reply. Deputy Clark found defendant on the floor in a closet. The deputy ordered defendant to put his hands to his side, defendant refused, and the deputy pointed his Taser at defendant. Defendant crawled towards a butcher knife two to three feet away and ignored the deputy's orders. Defendant stood up and grabbed a lamp. Deputy Clark grabbed defendant and the two deputies then took defendant into custody.

On cross-examination, Deputy Clark explained that he had known about the arrest warrant for defendant for two to six months but had not seen defendant. When the

---

[1] *Pitchess v. Superior Court* 11 Cal.3d 531 (*Pitchess*).

3

deputies arrived at Villany's residence, Deputy Shannon first spoke with Villany. Deputy Clark approached them and heard Deputy Shannon "again" ask Villany for permission to enter the residence. Defense counsel then inquired: "[I]sn't it true that Mr. Villany *initially* told Deputy Shannon he did not want you going into the residence?" (Italics added.) Deputy Clark answered, "Not that I know of. I did not hear any of that -- [¶] . . . [¶] . . . if that did happen."

Only Deputy Clark testified at the suppression hearing and the matter was submitted without argument. The trial court denied the suppression motion.

At trial which began on May 8, 2012, the defense called Villany to testify. Villany explained that Mercer and defendant had been living in his home for about 45 days prior to defendant's arrest. Upon the deputies' arrival, Villany claimed that he asked Deputy Shannon whether he had a warrant to be on his property. Although the deputy claimed he had one, he refused to show it to Villany and threatened to take him to jail if he did not move out of the way. Another deputy was also present. Villany denied having been asked for his consent to enter his residence. He did not tell them they could not enter. Defense counsel asked what happened next. Villany responded, "They said, 'Is Scott here?' I said, 'Well, yes, he's upstairs.' And they said, 'Is the door open, the door at the top of the stairs?' I says [*sic*], 'yes, it's always open.' And they said, 'Well, you go first,' [s]o I went up the stairs, opened the door, walked inside the second level, and I said, 'Scott,' kind of loudly, twice, and got no reply. [¶] The deputies followed, pretty much, right in back of me. And asked, 'Well, where's he staying?' 'Up there.' And I pointed to . . . the upper level. And the two deputies went on upstairs." Villany opened the second story door when the deputies asked him to do so. Villany denied that the deputies announced their presence. Two deputies went up the stairs to the third level while Villany stayed in the living room. After some noise and shouting, defendant, in handcuffs, was escorted down the stairs by the deputies. Meanwhile, Villany pointed out a downstairs bathroom where Mercer was found.

4

On cross-examination, Villany denied that Deputy Shannon told him that there was an arrest warrant for defendant. Then, Villany admitted that Deputy Shannon explained that he had a warrant for defendant. When Villany found out, he admitted that he was "extremely mad." Villany denied that he told the deputies to go ahead and arrest defendant. Instead, Villany claimed that "[t]here was no conversation about warrants or drugs at all, until they actually brought [defendant] down to the lower level." Villany then admitted that there was a conversation about a warrant when he first spoke with Deputy Shannon. Villany stated that he asked Deputy Shannon if he had a warrant to be on his property and that the deputy responded affirmatively but refused to show it to Villany, claiming the deputy said, " 'we don't need one, get out of the way or you're going right to jail.' " Villany had called the sheriff's office to say the deputies acted in a professional manner. He did not complain about Deputy Shannon's conduct, explaining he thought the deputy was " 'just excited at the time.' "

### Analysis

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) To demonstrate deficient performance, defendant "must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People v. Pope* (1979) 23 Cal.3d 412, 425.) " 'Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) Where " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza*

*Tello* (1997) 15 Cal.4th 264, 266.) "[A] claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

"Generally, . . . prejudice must be affirmatively proved." (*Ledesma, supra*, 43 Cal.3d at p. 217.) To demonstrate prejudice, defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*Id.* at pp. 217-218; *People v. Williams* (1997) 16 Cal.4th 153, 215.)

Based on Villany's testimony at trial and defense counsel's questioning of Deputy Clark at the suppression hearing, defendant claims and the People agree that it can be reasonably inferred that counsel was aware, at the time of the suppression hearing, that Villany did not voluntarily consent to the deputies' entry into his home. We disagree.

The record sheds no light on why defense counsel did not call Villany to testify at the suppression hearing. We can fathom a satisfactory reason. Defense counsel's questioning of Deputy Clark at the suppression hearing whether Villany had "initially" told Deputy Shannon that they were not allowed into the residence does not necessarily mean that defense counsel was aware that Villany would testify at trial that he did not voluntarily consent or that he had been threatened. Defense counsel's questioning of Deputy Clark at the suppression hearing reflects that he had read the report of Deputy Shannon who had stated that Villany initially refused to consent but when he learned that defendant had lied about not having any warrants, Villany then consented.[2]

_____

[2] At trial, Deputy Shannon explained that he contacted Villany when they first arrived and that Villany did not consent to their entry. When Deputy Shannon explained that defendant and Mercer both had outstanding warrants, Villany became upset and stated

6

Although Villany testified at trial that he had spoken to defense counsel two to three weeks before trial began and that counsel had asked "some questions about what happened that night," Villany did not testify that he had explained to defense counsel at that time or prior to the suppression hearing that he never consented to the deputies' entry into his home or that he had been threatened with jail if he did not move out of the way. Also, Villany may have given defense counsel conflicting information. On cross-examination, Villany gave inconsistent statements about his consent, first denying any discussion with Deputy Shannon about a warrant and then admitting that he had asked about a warrant. Villany also admitted that he was extremely mad when told that defendant had an arrest warrant and that defendant had lied to Villany. Villany never complained to the sheriff's office about the deputies' conduct but instead told the sheriff's office that the deputies had acted professionally.

Defense counsel has not had an opportunity to explain his decision not to call Villany at the suppression hearing. Defendant has failed to demonstrate on this record that counsel's performance was deficient. Defendant is relegated to filing a petition for a writ of habeas corpus.

II

Defendant contends the trial court abused its discretion in imposing a consecutive term for the subordinate offense of possession of methamphetamine to the principal offense of furnishing or selling methamphetamine. We reject this contention.

**Background**

The search incident to defendant's arrest revealed a digital scale with white residue, a smoking pipe, and three cell phones in the room where defendant was found. On his person, defendant had a baggie with 0.52 grams of methamphetamine and $369 in

---

that he had asked defendant before he moved in and defendant claimed he had no warrants. Villany then consented to the deputies' entry.

cash.  Mercer was found in the first floor bathroom.  Prior to the deputies' arrival, she had smoked methamphetamine three or four times that day.  Defendant had provided the methamphetamine to her.[3]

Prior to sentencing, both the prosecutor and defense counsel filed written sentencing memorandums.  Defense counsel argued for concurrent sentencing, arguing the furnishing/selling to Mercer and his possession "all occurred not only in the same place but in a relatively short time period as well.  Those circumstances indicate the single period of aberrant behavior which would indicate concurrent sentences would be appropriate."  The prosecutor sought consecutive sentencing, arguing that the crimes were predominantly independent of each other, were separate acts of violence, and were committed at different times or separate places.  The prosecutor also cited aggravating factors in support of consecutive sentencing.

At sentencing, the trial court stated that it had read the probation report and the parties' respective sentencing memorandums.  Both defense counsel and the prosecutor argued their respective positions on sentencing.  Thereafter, the trial court imposed, inter alia, the midterm of three years for furnishing/selling, the principal count, and a consecutive one-third the midterm or eight months for possession of methamphetamine, one of the subordinate counts, finding that the crimes were predominantly independent of each other and committed at different times.  The court stated:  "I agree with you, [defense counsel], that the probation report doesn't accurately reflect what's required by the Court to assess whether or not it should be consecutive or concurrent.  And what we look at are the Rules under [California Rules of Court, rule] 4.425(a)(1), whether or not

---

[3] Mercer also revealed that defendant bought an ounce of methamphetamine every 10 days and sold it to about 10 people.  Text messages on defendant's cell phone suggested that he was selling methamphetamine.  The jury acquitted defendant of possession for sale but convicted him of possession.

8

the crimes were predominantly independent of each other. And at trial we certainly heard evidence that the furnishing or the giving of the methamphetamine to Ms. Mercer was earlier in the morning and the methamphetamine was found on the Defendant later in the evening when he was arrested were independent, predominantly independent of each other. So I'm going to find that to be true under [rule] 4.425(a)(1). The [rule 4.425(a)(2)] factor is separate acts of violence does not seem to apply. Under [rule 4.425(a)(3)], the crimes were committed at different times or separate places. Although they might not have been separate places, it does appear to the Court that they were committed at different times, earlier in the day and later in the evening, even though they were the same day. It does appear to me that they were found -- or the crimes were committed at different times." The trial court also cited factors in aggravation, that is, defendant's violent conduct of using the lamp in a menacing manner, defendant's priors were numerous and of increasing seriousness, defendant served a prior prison term, he was on probation when he committed the offense, and his prior performance on probation or parole was unsatisfactory. Defense counsel posed no objection.

**Analysis**

A trial court's sentencing decision is reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no

9

reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

California Rules of Court, rule 4.425(a)(1) and (3) provide, respectively, that in imposing a consecutive or concurrent sentence, the trial court considers whether "[t]he crimes and their objectives were predominantly independent of each other" and "committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." California Rules of Court, rule 4.425(b) provides that "[a]ny circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) [a] fact used to impose the upper term; [¶] (2) [a] fact used to otherwise enhance the defendant's prison sentence; and [¶] (3) [a] fact that is an element of the crime may not be used to impose consecutive sentences."

Defendant contends the trial court abused its discretion in imposing consecutive sentences by relying upon the factors that the crimes were predominately independent of each other and were committed at different times. With respect to the trial court's citation of aggravating factors to support imposition of consecutive sentences, defendant only argues "[t]his is refuted by the fact that the court chose the middle term for the principal offense and rejected the upper term."

Defendant has failed to demonstrate an abuse of discretion. Defendant furnished or sold methamphetamine to Mercer and was found in possession of a half-gram of methamphetamine on his person later that same day (he was no longer in possession of the methamphetamine he provided to Mercer). This fact supported the trial court's findings that the crimes were predominantly independent and committed at different times. Moreover, there were several aggravating factors, none of which defendant challenges on appeal, which supported a consecutive sentence. Had the trial court used these aggravating factors to impose the upper term on the principal count, defendant would now be complaining of dual use. We find no abuse of discretion

10

### III

We note errors in preparation of the abstract of judgment. Defendant was acquitted of possession of methamphetamine for sale as charged in count II but was convicted of the lesser included offense of possession of methamphetamine. The abstract of judgment properly refers to Health and Safety Code section 11377, subdivision (a), but misdescribes the offense as possession for sale. The abstract also erroneously reflects that defendant was sentenced as a two-strike offender. A strike prior was neither alleged nor proved. We will order the abstract corrected accordingly.

### DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment, properly describing count II as possession of methamphetamine and *not* checking the box for a two-strike offender, and to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation. The judgment is affirmed.


      BLEASE      , Acting P. J.


We concur:


      MURRAY      , J.


      HOCH      , J.

11