Filed 3/23/15  P. v. Melendez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B250067 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA395226) |
| v. | |
| JAVIER MELENDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Gonzales Lomeli, Judge, Kathleen Kennedy, Judge.  Affirmed with directions.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Javier Melendez, appeals his conviction of assault with a firearm (two counts), attempted murder (two counts), carrying a concealed weapon, and shooting at an occupied vehicle, with criminal street gang and firearm enhancements (Pen. Code, §§ 245, 664, 187, 25400, 246, 186.22, subd. (b), 12022.5, 12022.53).[1]  He was sentenced to state prison for a term of 52 years to life.

The judgment is affirmed with directions.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On March 16, 2012, Erick Beltran and Faustino Zamudio were working as security guards at the Fallas Paredes Shopping Center.  Beltran was driving a patrol car, a red Ford Fusion, and Zamudio was in the front passenger seat.  Both men were armed.

They saw defendant Melendez, his brother Mauricio[2] and Jose Luis Luna "throwing" gang signs while drinking beer and screaming at passing cars.  One of the three men threw a bottle at a passing car.  Beltran drove slowly toward them, going about 10 miles per hour with his headlights illuminating the area.  Mauricio and Luna said something to Melendez, who turned around, pulled a revolver from his waistband and pointed it at Beltran.  Melendez yelled, "What's up homie?" and fired two or three shots at the patrol car.

Beltran jumped out of the patrol car, took cover behind the front car door, and fired back at Melendez.  Mauricio and Luna started shooting at Beltran.  Melendez also fired at Beltran two or three more times, and Beltran retreated to the rear of the car while shooting back at Melendez.  Meanwhile, Zamudio had also jumped out of the patrol car. All three men shot at Zamudio and he shot back at Mauricio and Luna.  Melendez began running away from the shootout, firing as he went.  Mauricio and Luna ran toward an

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     Because defendant Melendez and Mauricio share the same last name, we refer to Mauricio by his first name to avoid confusion.

alley and also continued shooting as they ran. A resident in a nearby building suffered a gunshot wound during all this gunfire.

Zamudio called 911 and the police responded to the scene, where they detained Melendez, Mauricio and Luna. Officers found three spent .357-Magnum shell casings in Melendez's pants pocket and a box containing 20 live .357-Magnum shells near where Melendez had been apprehended.

Los Angeles Police Officer Arshavir Shaldjian testified as a gang expert. He monitored the Avenues gang, and he opined that all three assailants were members of that gang. Responding to a hypothetical question, Shaldjian opined that the charged offenses had been committed in association with and for the benefit of a criminal street gang.

2. *Defense evidence.*

Melendez testified that, on the night of the incident, he had gone to eat at a taco truck with Mauricio and Luna. Melendez then returned to his apartment building. As he was trying to enter the building through a rear door, he saw a bright light behind him and someone screamed, "Hey." Melendez put down his beer bottle and turned around. He saw Beltran standing outside a car, aiming a gun at him. Beltran did not appear to be a security guard and the car did not look like a security patrol car.

As Melendez turned around, Beltran shot at him. Melendez shot back three or four times with a revolver he carried for protection because he had been robbed twice. Melendez testified he was not a gang member and he shot at Beltran only because he feared for his life. After firing three or four times, Melendez ran. He took the bullets out of his gun and threw the gun away. He also had a box of bullets that he threw away.

**CONTENTIONS**

1. Melendez's sentence violates the statute prohibiting multiple punishment (§ 654).

2. There was *Pitchess*[3] error.

3. The abstract of judgment contains a clerical error.

---

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

## DISCUSSION

1. *Melendez's sentence did not constitute improper multiple punishment (§ 654).*

Melendez contends his sentencing violated section 654, the prohibition against multiple punishment, because all of his crimes arose out of a single, indivisible transaction. There is no merit to this claim.

a. *Legal principles.*

Section 654, the prohibition against multiple punishment, provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) " 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

" '[T]he limitations of section 654 do not apply to crimes of violence against multiple victims.' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1063; see, e.g., *People v. Young* (1992) 11 Cal.App.4th 1299, 1311-1312 [consecutive sentences for robbery-felony-murder and robbery not barred by section 654 where defendant robbed one person and in commission of that robbery killed a second person].) "The multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784; see *People v. Miller* (1977) 18 Cal.3d 873, 886, disapproved on other grounds in *People v. Oates*, *supra*, 32 Cal.4th at p. 1067, fn. 8

4

[section 654 does not bar punishment for armed robbery of clerk and violent burglary against guard of same store].)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them. [Citations.] 'We must "view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312-1313.) This rule applies whether or not the trial court made express factual findings. (See *People v. Osband* (1996) 13 Cal.4th 622, 730 [trial court's implicit determination that defendant had more than one objective was supported by substantial evidence]; *People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585 [trial court's section 654 finding, whether explicit or implicit, may not be reversed if supported by substantial evidence].)

b. *Melendez's sentencing hearing.*

At the sentencing hearing, the prosecutor argued that the trial court should impose multiple sentences because Melendez had entertained more than a single objective: "So . . . the driver [i.e., Beltran] had to get out of the car, had to take cover, and firing continued. So it went from shooting at the vehicle to directly firing at the victim." The trial court concurred with this analysis: "The court is going to sentence the defendant on the attempted murder charges. And I am going to find that they are [] separate offense[s]; that both victims had exited the vehicle, so therefore, it was not still a shooting into an occupied motor vehicle at that point."[4]

The trial court then imposed the following sentence on Melendez. On count 7 for shooting at an occupied vehicle (§ 246) with a gang enhancement, the court imposed a principal term of 15 years to life. On counts 3 and 4 for attempted murder (§§ 664, 187),

---

[4]     The court went on to say: "However, I am going to exercise my discretion to sentence those two counts concurrently to each other but consecutive to the indeterminate sentence on the 246 [shooting at an occupied vehicle] charge . . . ."

5

with firearm and gang enhancements, the court imposed two concurrent terms of 37 years, but ran those two terms consecutive to the sentence on count 7. On count 5 for possession of a concealed firearm (§ 25400, subd. (a)(2)) with a gang enhancement, the court imposed a concurrent term of four years. On counts 1 and 2 for assault with a deadly weapon (§ 245), the court imposed two concurrent terms of seven years, but stayed those sentences under section 654. The total sentence amounted to a term of 52 years to life.

Melendez contends this sentence was illegal and that the only unstayed sentence should have been on count 7, his conviction for shooting at an occupied vehicle. On all the other counts, he asserts, the trial court should have stayed execution of sentence. There is no merit to this claim.[5]

        c. *Discussion*.

Melendez asserts his sentence violated section 654 because all of the convictions arose out of a single incident in which he had only one objective: to kill the two security guards. We disagree.

As to the concealed weapon charge (count 5), Melendez's argument fails because he had possession of the weapon well before the shooting incident occurred. " 'Whether a violation of [former] section 12021, forbidding persons convicted of felonies from possessing firearms concealable[6] upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held

---

**5**     Because the trial court did stay the seven-year terms imposed on counts 1 and 2, those sentences are not at issue in this appeal.

**6**     A 1989 amendment to former section 12021 deleted a provision requiring that the felon's weapon "be capable of being concealed upon the person." (*People v. Sarber* (1992) 7 Cal.App.4th 1336, 1338, fn. 3.)

to be improper where it is the lesser offense.' [Citation.]" (*People v. Bradford* (1976) 17 Cal.3d 8, 22; see *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218 ["[S]ection 654 applies where the defendant obtained the prohibited weapon *during* the assault in which he used the weapon. [Citations.] However, section 654 has been found not to apply when the weapon possession preceded the assault."].) It appears from the evidence that Melendez arrived at the shooting scene *already in possession* of the gun he used to shoot at Beltran and Zamudio. Hence, there was no error in imposing an unstayed prison term on count 5.

As to whether Melendez could lawfully be sentenced for shooting at an occupied vehicle *and* two counts of attempted murder (one for each victim), Melendez argues, "The court was wrong in artificially separating the shots fired while the vehicle was occupied and the shots fired when the security guards were outside the vehicle." However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment [under section 654]." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; see, e.g., *People v. Felix* (2001) 92 Cal.App.4th 905, 915 ["multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm"].) Thus, in *People v. Trotter* (1992) 7 Cal.App.4th 363, multiple assault sentences were proper where the defendant fired three gunshots in slightly more than a minute at a pursuing police officer during a freeway chase: "[T]his was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible . . . ." (*Id.* at p. 368; see also *People v. Surdi* (1995) 35 Cal.App.4th 685, 689 [multiple stabbing episodes each evinced separate intent to do violence where "initial stabbing attack was interrupted . . . to permit [defendant] to strap down [victim] with a seat belt"].)

As in *Trotter*, and as the trial court reasoned, Melendez pulled the trigger a number of times. Most significantly, he fired at Beltran both when he was sitting inside the patrol car and then after Beltran had jumped out and was hiding behind the patrol car.

"[T]his was not a case where only one volitional act gave rise to multiple offenses." (*People v. Trotter*, *supra*, 7 Cal.App.4th at p. 368.)

The present case is distinguishable from *People v. Sok* (2010) 181 Cal.App.4th 88, on which Melendez relies. In that case, Sok was convicted for one count of shooting at an occupied vehicle and two counts of premeditated attempted murder after firing several shots into a car and wounding one of four passengers. On the assumption Sok had only a *single criminal intent* to murder two of the car's occupants, which was the conclusion of the trial court and the People did not dispute, the Court of Appeal concluded Sok "could not be sentenced for both attempted murder and shooting at an occupied vehicle." (*Id*. at p. 100.) But Sok apparently fired only a single burst of gunshots at several people who were all sitting in a car. That is very different from the case at bar. Melendez's initial burst of gunfire had been aimed at Beltran while he was sitting inside the patrol car. Melendez then subsequently shot at Beltran again *after* he had gotten out of the car.

The trial court did not err by imposing unstayed sentences on counts 3, 4 and 5 in addition to count 7.

2. *Review of in camera* Pitchess *hearing.*

Melendez requests review of the trial court's ruling on his motion seeking discovery under *Pitchess*, *supra*, 11 Cal.3d 531. Review of the in camera hearing by this court reveals no abuse of the trial court's discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.) The trial court conducted the hearing properly, describing the nature of all the officer complaints.

3. *Correct clerical error in abstract of judgment.*

Melendez contends, and the Attorney General acknowledges, there is a clerical error in the abstract of judgment. The jury found *untrue* the allegation that the two attempted murders (counts 3 and 4) were willful, deliberate and premeditated, but the abstract of judgment reflects convictions for premeditated attempted murder.

It is appropriate for us to now correct these errors.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [abstract of judgment is not judgment of conviction and does not control if different from trial court's oral judgment; it is proper and important to correct such errors in abstracts of judgment]; *In re Candelario* (1970) 3 Cal.3d 702*,* 705 ["It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. . . .  The court may correct such errors on its own motion or upon the application of the parties."].)

We will, therefore, direct the trial court to correct the abstract of judgment to accurately reflect the nature of these two convictions.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment to reflect that Melendez's two attempted murder convictions were not premeditated, and to forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

LAVIN, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.