Filed 5/26/15  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LOVELL DONNELL WILLIAMS,<br><br>Defendant and Appellant. | C075763<br><br>(Super. Ct. No. MF034009A) |

In December 2011, defendant Lovell Donnell Williams parked his car in the driveway of Rod Serrato's house, went to the front door, and rang the doorbell for about two minutes.  Defendant then looked through a window into the house and jumped a side fence.  Defendant returned to his vehicle, got some gloves and a screwdriver.  Five minutes later, he walked out of the house through a sliding door carrying a turkey pan containing a plastic bag.  He went back in the house and retrieved two more bags.  Serrato's neighbor, Venil Animaiya, recorded defendant's license plate number and called the police.

1

Animaiya believed a person named Rod lived at the house. He had last seen Serrato about a week earlier. Tracy Police Officer James Harries investigated the reported burglary. There were no signs of forced entry, the rear sliding door was unlocked and ajar, and the side sliding door was unlocked, but closed. The inside of the home appeared as though someone was living there. One of the rooms contained marijuana plants and grow lights, there appeared to be hashish in the home, and a certificate on the wall authorizing the bearer to posses the contraband. Harries spoke with Serrato. Serrato told Officer Harries he lived at the home. Serrato reported several items had been removed from the home, including a television set, a bottle of tequila, and some marijuana. Serrato had not given anyone permission to enter the home.

PROCEDURAL HISTORY

Defendant was charged with first degree burglary and six prior prison term enhancements.

After being held to answer at the preliminary examination, defendant filed a nonstatutory motion to dismiss the information based on alleged perjury by Officer Harries during that hearing. Defendant filed the transcript of an interview by Tracy Police Officer Gustavo Cisneros with Ray Johnson, who owned a business that cleaned houses prior to foreclosure sales. Defendant worked for Johnson's company. Johnson said his company cleaned homes that are abandoned by the owners, usually in foreclosures. The company did not remove property of people living in the home, but if the property appeared abandoned, his employees could enter homes and take property. Defendant also filed a transcript of Officer Harries's interview of Serrato. In the interview, Serrato said the house was vacant and no one had lived there for a while. He did go there occasionally to look at his cannabis plant in one of the rooms. But he could no longer afford the home so he was going to have to short sell it. Serrato was not aware of anyone who was scheduled to come and clean the house. The People responded with a declaration from Officer Harries which said he had had a second conversation with

2

Serrato, the day before the preliminary examination, at which time Serrato told Harries he had not received a notice to vacate the premises, was negotiating with the bank, and slept at the home two or three times a week.

Defense counsel argued the People had failed to provide defendant with exculpatory evidence when they did not provide the audiotapes of the Serrato and Johnson interviews until after the preliminary examination, and the information available "would have created a very different preliminary hearing."

After hearing argument, the trial court denied the motion. The trial court "added the non-disclosed information to the evidence, . . . , and retested for probable cause. The Court has looked at the materiality of the non-disclosed information and what effect it had on the determination of probable cause . . . . [¶] The statement by Mr. Serrato that the house was vacant . . . that statement is outweighed for purposes of a finding of probable cause by the statement that he went to the residence two times per week to check on his cannabis plant, [and] the neighbor Venil Animaiya having identified Mr. Serrato as the resident of the house in question. And that's from the preliminary hearing transcript. Mr. Serrato's statement to Officer Harries that he resided in the house. And that is from the declaration of Officer Harries. That there were items in the -- in the downstairs rooms of the residence, and that there was a room actively being used for growing marijuana, and that the back yard [*sic*] was still in a livable state, and that guns registered to Mr. Serrato were stored in the house. [¶] Based on the testimony presented at the preliminary hearing, the evidence from the tapes not available to the defendant at the preliminary hearing, the Court has determined that the prosecution's nondisclosure of the exculpatory information did not affect the determination of probable cause and that defendant is not entitled to a dismissal of the information."

Following the denial of the motion to dismiss, defendant filed a *Pitchess*[1] motion to obtain discovery of any complaint or disciplinary action against Officers Harries and Cisneros, to impeach one or both at trial. The motion argued the discovery could be used to locate witnesses who could testify that one or both of the deputies had a character "for fabricating charges and/or evidence, false arrest, excessive force, racial motivation." At the hearing, defense counsel argued that the audiotapes of the interviews contradicted Officer Harries's preliminary hearing testimony and both officer's reports were misleading.

The trial court found defendant had not made a showing of good cause to justify reviewing the officers' records. The trial court found the records were not relevant because defendant had the audiotapes with which to impeach the officers' credibility. Therefore, the trial court denied the *Pitchess* motion without conducting an in camera review of the personnel records.

Defendant pled no contest to first degree burglary. The enhancement allegations were dismissed on the People's motion. In accordance with the stipulated sentence, the trial court sentenced defendant to a term of four years in state prison. The trial court awarded defendant 1,464 days of presentence custody credit. Accordingly, the trial court released defendant based on time served and placed him on parole. The trial court ordered defendant to pay a $280 restitution fund fine and a matching parole revocation fine, stayed pending successful completion of parole, a $40 court security fee, and a $30 conviction assessment fee. The trial court granted defendant's request for a certificate of probable cause.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

*PEOPLE V. WENDE* REVIEW

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, requesting the court to review the record and determine whether there are any arguable issues on appeal. Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed and we received no communication from defendant. We have undertaken an examination of the entire record pursuant to *Wende*, and we find no arguable error that would result in a disposition more favorable to defendant.

### DISPOSITION

The judgment is affirmed.


      ROBIE      , Acting P. J.


We concur:


      MAURO      , J.


      HOCH      , J.