Filed 12/13/13  P. v. Gilbert CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA MICHAEL GILBERT,<br><br>        Defendant and Appellant. | A136642<br><br>(Alameda County<br> Super. Ct. Nos. H49012 & H52066) |

A jury found defendant Joshua Michael Gilbert guilty of evading an officer. Defendant contends his conviction must be reversed due to the trial court's inadequate response to an asserted discovery violation by the prosecution—failing to timely turn over to the defense a supplemental police report recounting inculpatory statements defendant made to police officers after his arrest.  He maintains the trial court prejudicially erred by failing to either exclude testimony about the statements or, at a minimum, to instruct the jury to consider the prosecution's discovery violation in weighing that testimony.  We find the trial court's error, if any, was harmless, and affirm the judgment.

## I.  BACKGROUND

Defendant was charged by information with one count of evading a police officer (Veh. Code, § 2800.2, subd. (a); count one) and one count of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count two).  The information also alleged a

prior vehicle theft conviction (Pen. Code,[1] § 666.5) and a prior separate prison term (§ 667.5). Defendant pleaded not guilty, and a jury trial began on July 2, 2012. The court dismissed the vehicle theft count on the prosecution's motion.

## A. *Initial Sighting of Vehicle and Pursuit*

On March 28, 2012, at approximately 2:30 a.m., Officer Ryan Kiefer of the Livermore Police Department was on patrol on Nissen Drive in Livermore. He saw a blue Volkswagen Touareg driven by a White adult male pull out of the driveway of the Extended Stay America Hotel (Extended Stay). Kiefer was traveling southbound and the blue Touareg was traveling northbound on Nissen. As the Touareg approached him, Kiefer could not see whether there were any passengers in the car. He noticed the Touareg did not have a front license plate in violation of the Vehicle Code. Intending to stop the Touareg, Kiefer made a U-turn in the hotel parking lot and followed it onto Interstate 580 where he saw the vehicle traveling at 95 miles per hour in a 65-mile-per-hour speed limit zone, and changing lanes without signaling several times. Kiefer continued to follow the vehicle after it exited the freeway. The Touareg twice made left turns against red lights and traveled at 50 miles per hour in a 40-mile-per-hour speed limit zone. A chase ensued after Kiefer activated his emergency lights and attempted to stop the Touareg. Kiefer was never closer than three car lengths to the Touareg during the chase. The pursuit lasted approximately six minutes and went 4.6 miles from where Kiefer initially turned on his lights and siren. At the end of Scenic Road, a dead end, the Touareg went through a barbed wire fence and across an open pasture, through a second barbed wire fence, and then hit a pole. Kiefer had been in contact with the dispatcher throughout the chase and reported the crash the moment it happened.

Kiefer's patrol car was approximately 50 yards away from the crash site. He pulled up to the Touareg and parked behind it. He did not see anyone get out of the car after it stopped. But because of the vehicles' respective positions he could not see the driver's side until he exited the patrol car and approached it on foot. When he did, he saw the driver's

---

[1] All further statutory references are to the Penal Code.

2

door was open and the car still running. He heard what he believed to be the sound of a person jumping over a chain-link fence, a pause, and then the same sound. When Kiefer approached the Touareg, after waiting for another officer to arrive, he found a woman, identified as Caitlin Affleck, in the passenger seat. In a recorded statement given to police at the scene and played for the jury, Affleck identified defendant as the driver. She stated defendant was a friend, had called her and picked her up earlier in the evening, and had driven her to the Extended Stay parking lot where they spent about an hour talking. She told police defendant was driving her home when he noticed Kiefer was following his car. He "started freaking out," and attempted to flee. She was "screaming at him to stop," and thought about jumping out of the vehicle, but was afraid of getting hurt. She said defendant jumped over the fence after the car stopped, and that was the last she saw of him. Officer Keith Pini testified Affleck identified defendant as the driver in an in-field showup shortly after his arrest.[2]

Inside the Touareg, Kiefer found a California license plate that was not registered to the car, a New York license plate, and some mail that did not have defendant's name on it. A check of the car ownership showed defendant was not the owner of the car.

## B. *Defendant's Arrest*

The crash site was located in a construction yard owned by Calco Fence Inc. at 715 Laughlin Road. The property was completely surrounded by a chain-link fence and there was also another interior fence. A number of backup officers quickly arrived at the crash site, and within eight minutes of the crash had established a visual perimeter on all four sides of the property. Police did not search or secure the adjacent residential areas. Approximately 45 minutes to an hour after the crash police began a search of the area. In the inner fenced-in area officers found a black hooded sweatshirt; though the ground was wet because it had been raining earlier, the sweatshirt was dry. Approximately two hours

---

[2] At trial, Ms. Affleck stated she had been too intoxicated to remember who was driving the car, or many other details of the night. After a hearing, the trial court found this failure to remember inconsistent with Affleck's recorded statement and admitted the recording to impeach her prior testimony.

after the crash, a police dog located a subject laying or hiding behind a partition and underneath a blanket in an abandoned building on the property. Based on prior contacts, Kiefer recognized the subject as defendant. Defendant was arrested and the search was discontinued.

After his arrest, Officers Dufour and Grajeda transported defendant to the hospital for medical treatment. Over defense objection, Officer Grajeda testified that about 30 minutes after arriving at the hospital defendant spontaneously asked Officer Dufour in Grajeda's presence how Dufour knew he was the driver of the stolen car. Defendant went on to make comments to the effect that he was in trouble and asked whether there was anything he could do to get the charges dropped. He told Dufour he knew the locations of drugs, stolen property, and guns the police could recover.

## C. *Other Evidence from 715 Laughlin Road*

The Touareg showed no signs of forced entry; the key was in it and it was still running when police arrived. Officer Lindsay Dyer, a crime scene technician with the Livermore Police Department, processed the scene for evidence. This included taking multiple photographs of footprints left around the area, as well as making a casting of the footprint left in the mud between the curb of Laughlin Road and the fence. She also took photos of the shoes defendant was wearing when he was arrested, and testified the pattern and shape of the soles were similar to that of the print she cast. Dyer's photos showed footprints that did not match the shoes defendant was wearing.

## D. *Defense Case*

The defense called no witnesses. Defense counsel argued in closing that there were three occupants in the vehicle, defendant was not the driver, and Affleck had lied to police at the scene in order to protect the third person who evaded the police search.

## E. *Verdict, Sentence, Appeal*

The jury found defendant guilty of evading an officer, and he was sentenced to three years in state prison.

4

## II. DISCUSSION

Defendant contends the trial court prejudicially erred in failing to find a violation of the state discovery statute,[3] and in failing to either exclude Officer Grajeda's testimony regarding defendant's incriminating statements altogether, or instruct the jury with CALCRIM No. 306.[4]

### A. *Relevant Facts*

Officers Kiefer and Dufour each wrote police reports that included defendant's spontaneous question to Dufour, "[H]ow did you know I was driving the [stolen car][?]" However, only one document—a supplemental report authored by Officer Dufour— recounted the entirety of defendant's statements to Dufour in the hospital, including his comments about being in trouble, trying to get the charges dropped, and offering to disclose the location of stolen items. The prosecution believed it had timely produced both reports to the defense before trial. However, when the prosecution proposed after the first day of trial testimony to elicit police testimony regarding all of defendant's incriminating statements to Dufour, defense counsel objected and advised the court that she had no prior knowledge of any incriminating statement by her client except his question about how police knew he was driving the car. After checking her discovery files, she asserted Officer Dufour's supplemental report and the information contained in it had never previously been disclosed to her. Counsel sought the exclusion of any testimony regarding defendant's statements to

---

[3] Section 1054.1 states: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] . . . [¶] (b) Statements of all defendants." Absent good cause, such disclosure must be made at least 30 days prior to trial. (§ 1054.7.)

[4] CALCRIM No. 306 reads in relevant part as follows: "An attorney for [the People] failed to disclose: [description of evidence] [within the legal time period]. [¶] In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

5

Dufour about being in trouble, trying to get the charges dropped, or offering to disclose the location of stolen items.

After hearing extensive argument on the issue, the trial court allowed Officer Grajeda to testify as to all of defendant's statements. The court offered to give the defense a day or two to investigate and prepare for the new evidence, but it declined to make any finding the prosecution failed to produce Dufour's supplemental report. In declining to find a discovery violation, the court emphasized that neither the trial prosecutor nor defense counsel were the original lawyers in the case and neither was involved in the actual exchange of discovery. The court stated it therefore had no factual basis for finding Officer Dufour's report was not turned over to the public defender's office along with other police reports, or for precluding use of the statements disclosed in it. The court stated it would view the matter differently if both counsel had personally participated in the exchange of discovery and could make representations about it based on personal knowledge. For its part, the defense declined the court's offer of extra time to investigate and prepare, stating extra time would not remedy the prejudice resulting from the prosecution's asserted discovery violation. Without further elaboration, defense counsel stated the prejudice consisted of the fact that the statement might have affected the decision to go to trial, might have led to a defense *Pitchess*[5] motion, and would have caused her to select a different jury.

**B.** *Analysis*

As an initial matter, we note defendant did not propose the use of CALCRIM No. 306 in the trial court. The only sanction defendant's trial counsel proposed was exclusion of the subject testimony. Exclusion would not have been an appropriate remedy given the absence of any evidence Dufour's statement was deliberately withheld from the defense for tactical advantage.[6] (See *People v. Reyes* (1974) 12 Cal.3d 486, 502 [where not willful, the failure to disclose should not be punished by the suppression of

---

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) authorized discovery of police personnel records in certain instances.

[6] Defendant's trial counsel denied she was suggesting the prosecution deliberately withheld the statement.

6

evidence, but by giving the offended party a proper opportunity to meet the new evidence, such as by a continuance].) While defendant states the trial court "never reached" the issue of sanctions due to its erroneous failure to find any discovery violation had occurred, there was in fact extended argument on the defense's claim of prejudice from the late discovery, and ample opportunity for defendant's trial counsel to propose an instruction under CALCRIM No. 306. We see no basis to fault the trial court for failing to give an instruction the defense never requested.

In any event, reversal for judicial error under California law requires a showing of prejudice. (*People v. Roybal (*1998) 19 Cal.4th 481, 520.) "A trial court's erroneous ruling is not grounds for reversal unless the defendant suffers actual prejudice therefrom. [Citations.] Prejudicial error must be affirmatively demonstrated and will not be presumed." (*People v. Bell* (1998) 61 Cal.App.4th 282, 291; see also *People v. Maury* (2003) 30 Cal.4th 342, 389; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *People v. Robinson* (1999) 72 Cal.App.4th 421, 429.) A violation of a state discovery statute generally "is subject to the harmless-error standard set forth in [*Watson,* at page] 836." (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.) Under *Watson*, a judgment will be affirmed unless it is reasonably probable that, absent the alleged error, a result more favorable to the defendant would have been reached. (*Id.* at p. 836.) Defendant argues the more stringent standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) should apply because the failure to disclose "implicated defendant's federal due process rights." (*People v. Gonzalez* (2006) 38 Cal.4th 932, 961.) Under *Chapman*, a judgment will be affirmed if the error was harmless beyond a reasonable doubt. (*Id.* at p. 24)

We find the trial court's error, if any, was harmless under both the *Watson* and *Chapman* standards. The evidence of defendant's guilt was overwhelming without regard to the inculpatory statements in issue. There was powerful direct evidence of guilt. Defendant was identified as the driver by Caitlin Affleck, the passenger who sat next to the driver during the entire incident. She provided a statement recorded moments after the pursuit ended, gave clear and coherent answers about what had occurred, and

7

identified defendant unequivocally as the driver. Affleck was still in shock from the events at the time of the interview, making it unlikely she would have had time or opportunity to concoct a false story. There was testimony Affleck again identified defendant as the driver in an in-field showup shortly after his arrest. Given the clarity of her answers during the taped interview, no reasonable juror could have believed Affleck was telling the truth at trial when she testified she was too drunk the night of the incident (less than three months before trial) to remember how she came to be in the car, who was driving, what led to the accident, or what she had told police when they arrived.

Numerous circumstances corroborated Affleck's original identification of defendant as the driver, and negated the defense theory she was trying to protect some unknown third person: (1) Kiefer pulled up behind the Touareg seconds after it crashed, saw no one exit the car, heard one person climbing over two chain-link fences, observed only the driver's door left open, and found Affleck by herself inside the car; (2) a shoe print matching defendant's shoe was found near the fence; (3) the crash and search took place in the middle of the night in an isolated industrial yard enclosed by two fences; (4) police quickly established a perimeter around the property, searched it intensively for two hours using officers and a K9 unit, and found no one other than defendant, who had no innocent reason to be on the property; (5) as a probationer driving a stolen car, defendant would have had a strong motive to evade police; (6) defendant's flight from the crash scene and efforts to conceal himself from police showed a consciousness of guilt; and (7) defendant acknowledged his guilt by spontaneously asking Dufour how the officer knew he was the driver.

By contrast, there was almost no evidence to support the defense theory of a third person driving the vehicle. The nonmatching footprint found by the crime scene technician near the crash site was easily explained by the number of police and other emergency personnel who arrived at the scene. The fact some personal belongings were found in the back seat of the vehicle is also not surprising since the vehicle was stolen. Based on the sum of the evidence before the jury, there is no reasonable possibility that

8

exclusion of the statements in issue, or an instruction under CALCRIM No. 306, would have resulted in a verdict more favorable to defendant.

## III.  DISPOSITION

The judgment is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Banke, J.


_____
Sepulveda, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.