Filed 10/15/13  P. v. James CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C071374 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F01097) |
| v. | |
| LOVIE JAMES, | |
| Defendant and Appellant. | |

A jury convicted defendant Lovie James of attempted voluntary manslaughter (Pen. Code, §§ 664/192, subd. (a)),[1] corporal injury to a cohabitant (§ 273.5, subd. (a)), elder abuse (§ 368, subd. (b)(1)), criminal threats (§ 422), and theft or taking of a vehicle (Veh. Code, § 10851, subd. (a)), and sustained great bodily injury allegations (§ 12022.7, subds. (a), (e)).  After sustaining a strike, a serious felony and three prior prison term allegations (§§ 667, subds. (a), (b)-(i), 667.5, subd. (b), 1170.12), the trial court sentenced defendant to 23 years in state prison.

---

[1]     Undesignated statutory references are to the Penal Code.

Defendant's sole contention on appeal is the trial court abused its discretion in concluding, after an in camera review, that there were no documents discoverable to defendant pursuant to his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Having undertaken an independent review of the sealed records, we find no abuse of discretion and affirm the judgment.

BACKGROUND

Around midnight on February 4, 2011, Elk Grove Police Officer Andrew Bornhoeft and his partner Officer Phillip Insixiengmay responded to a domestic violence call at Florence Taylor's Elk Grove home. Officer Bornhoeft found the 69-year-old Taylor standing in the garage. Her face was swollen and discolored, her right eye was discolored, very swollen and completely closed, and her left eye was also discolored and swollen. She also had bruises and contusions on her face.

Officer Bornhoeft asked Taylor to come inside and sit. Entering the home, he smelled a strong odor of gasoline and saw a red gasoline can sitting on top of the dryer. What appeared to be fecal matter and vomit were in the kitchen, and dentures were on the floor. Taylor told him that defendant beat and choked her and said he was going to kill both of them that night. She told Officer Bornhoeft that defendant took her car without her permission after the assault.

Cosumnes Fire Department paramedic Justin Quarisa arrived at the scene and saw Taylor lying down in the bedroom talking to a police officer. Quarisa noticed Taylor "had a lot of facial injuries." Taylor told him that she had been struck multiple times in the face with a fist, had been slammed into some cupboards, dragged across the floor, and doused with gasoline.

Elk Grove Police Detective Greg Kawamoto interviewed Taylor later the same day at the hospital. A recording of the interview was played to the jury. Taylor told Detective Kawamoto that defendant pulled her out of her bed by her neck and threw her

2

on the floor and started stomping on her stomach.  He also hit her in the head.  Defendant held a lighter in his hand and threatened to burn her after he poured gasoline on her.

Taylor suffered bleeding around the brain and facial fractures as a result of the attack.  Her injuries were consistent with having been beaten and kicked.

Taylor was unavailable for trial so her preliminary hearing testimony was admitted as evidence.  Taylor testified that defendant was her live-in boyfriend.  She argued with defendant on the day of the incident because he did not come home on time.  The argument took place in the kitchen, where she "started swinging" even though defendant did not touch her.  Defendant walked to the kitchen and Taylor followed, continuing the argument.  She bumped into defendant, slipped and fell, hitting her head on the corner of her granite island.  Defendant was gone when she got up.  Her nephew Anthony Clark showed up, and then "the fire department and the police and everything was [*sic*] at [her] house."  She did not talk to any officer about the incident.  Defendant did not throw gas on her; she put the gas can in her home earlier that day.  Her car was gone when she came home from the hospital and she did not give defendant permission to take it.

Taylor visited defendant at the Sacramento County jail 58 or 59 times between December 11, 2011, and February 7, 2012.  In a call to Taylor from jail, defendant told her, "I flashback on that scene, baby, and I hate it.  I apologize to you."  In another call, Taylor told defendant he broke her ribs and he replied, "For real?  No, honest, come on.  I ain't broke no ribs."  Later, defendant told Taylor he took her car because he had to get away.  Defendant asked Taylor if she loved him and she replied, "I don't love nobody that's done tried to kill me."  In another call, defendant told Taylor he had never done a thing to her until they "had the fight and the violence."  During the call, Taylor told defendant, "You choked me."

Before trial, defendant filed a *Pitchess* motion for the discovery of records regarding Officers Bornhoeft and Insixiengmay and Detective Kawamoto.  In a supporting affidavit, defense counsel alleged the gas can in Taylor's home may have been

3

moved, and Officers Bornhoeft and Insixiengmay and Detective Kawamoto had access to the can. The affidavit also noted that Taylor said she never consented to a search of her house and that there was no mention of consent to a search during her interview with Detective Kawamoto. The *Pitchess* motion sought civilian complaints against the three officers regarding falsification of reports, falsification of consent to search, or tampering with evidence.

Following a contested hearing, the trial court found good cause to conduct an in camera review of the officers' records. After conducting the review, the trial court determined that there were no documents subject to discovery.

DISCUSSION

Defendant requests independent review of the records presented to the trial court in camera to determine whether it was an abuse of discretion to deny defendant access to such records. (*Pitchess, supra*, 11 Cal.3d 531; *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286 [trial court's decision on discoverability of material in officer's files reviewed for abuse of discretion].)

As is customary, the records have been made part of the appellate record, but sealed, and appellate counsel for defendant has not been permitted to view them. (See Cal. Rules of Court, rule 8.328(c).) We have independently examined the in camera documents and reporter's transcript of the trial court's in camera hearing and review, and conclude the trial court followed the required procedure for in camera review under *Pitchess* (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229), that the record is adequate for meaningful appellate review (*People v. Myers* (2007) 148 Cal.App.4th 546, 553), and that the trial court did not abuse its discretion in refusing to disclose the contents of the officers' personnel files on defendant's *Pitchess* motion. (*People v. Myers, supra,* at p. 553.)

4

DISPOSITION

The judgment is affirmed.

          NICHOLSON     , J.


We concur:


      BLEASE     , Acting P. J.


      HULL     , J.