Filed 4/1/14  P. v. Knoefler CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sierra)

----

| | |
|---|---|
| THE PEOPLE, | C072549 |
| Plaintiff and Respondent, | (Super. Ct. No. CR02970X) |
| v. | |
| KANE KENNETH KNOEFLER, | |
| Defendant and Appellant. | |

Two citizens and three police officers testified that defendant Kane Kenneth Knoefler, in a drunken rage, threatened them and fought strenuously to resist arrest.  A jury convicted him of one count of making a criminal threat (Pen. Code, § 422) and three counts of resisting a peace officer (Pen. Code, § 69).  On appeal, defendant contends the trial court abused its discretion during its review of sealed transcripts of the officers' personnel files pursuant to his *Pitchess* motion[1] and by refusing to play an audiotape,

---

[1]  See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Evid. Code, §§ 1043-1045.

1

recorded by one of the arresting officers, that had not been transcribed. Finding no abuse of discretion, we affirm.

## FACTS

Neither the citizens whom defendant verbally abused nor the police officers he threatened wanted the night of July 22, 2012, to end as it did. Standing on the street inebriated, defendant shouted obscenities and tried to provoke two construction workers who had rented an apartment near the bar defendant frequented. Instead, they attempted to diffuse his anger and invited him up for a drink and some food. They were not the only targets of his wrath.

An owner of a local restaurant had just begun to relax after work when she heard a lot of noise and went out onto her balcony. Defendant started shouting profanities at her as well. She asked him to stop. While she was calling the police, he took his penis in his hand and told her she needed it. When asked by the dispatcher if defendant had any weapons, she asked if defendant's penis would count. She testified she was so terrified she vomited.

The police, who arrived in uniforms and marked cars, did not seek to arrest anyone but simply asked defendant and his friends to disperse because neighbors had complained about the noise. Defendant, shirtless, was demonstrably agitated. According to the officers, he was "hopping around on the balls of his feet like a boxer," spewing threats and obscenities. He warned, "I'm a trained cage fighter. I'll fuck you up." He told Deputy Nathan Rust he was a "fat fucker" and Deputy Nicole Pastore he was going to "fuck you in all your holes." At this point, defendant remained on a balcony while the officers interviewed the construction workers on the street and attempted to restore order. The construction workers gave them permission to enter their apartment.

Deputy Pastore, a former New York police officer and firefighter, testified that she remained on the street level because she could see bottles of hard alcohol and beer, which she feared could be thrown at her; she knew there was at least one weapon in the

2

apartment; and defendant's behavior was out of control. He continued yelling at the officers, stating, "[C]ome up you fucking pigs. Fucking cops . . . I'll fuck you both. I will fuck you both up. I'll fuck you. I just got out of the pen. And I shot someone before. I shot pigs before, and I can do it again."

Deputy Pastore was afraid. She believed defendant intended to carry out his threats. Not knowing how many people or how many weapons were in the apartment, she called for backup. Two additional officers responded.

With the additional support, the police officers ascended the stairway. Defendant attempted to jump over the railing of the stairs but fell backwards off the railing into the stairwell. He ran back into the apartment.

The officers went into the apartment and Deputy Rust ordered defendant to lie on the ground. Deputy Pastore placed handcuffs on him and tried to double-lock them to prevent the handcuffs from tightening and injuring defendant. Defendant, however, resisted and Pastore could neither search him nor double-lock the handcuffs. The officers lifted him off the floor and tried to get him to walk out of the apartment. As they reached the top of the stairs, defendant attempted to trip Deputy Pastore by wrapping his leg around hers. Another officer, observing defendant's attempt to trip Pastore, shoved the entire group into the wall to keep them from falling down the stairs.

As defendant continued to struggle, the officers had to carry him down the stairs and tried to put him into the patrol vehicle. He refused, stating, "I'm not going to jail. I'm not getting in the car." He pushed off the side of the patrol car with his legs, at which point Deputy Rust warned him that if he did not comply he would be Tased. When defendant continued to resist, Deputy Rust Tased his calf and was then able to get him into the car.

Yet when they arrived at the station, defendant once again refused to cooperate. He would not leave the patrol car, stating, "[T]his is my home now." Deputy Boyd had

to put him in a chokehold and obtain the assistance of another officer to get defendant out of the car and into the jail.

## DISCUSSION

## I

Deputy Pastore made an audio recording of a part of the incident. Just before the last witness testified at trial, defendant moved to admit the recording into evidence to demonstrate that he did not threaten the officers. The court denied the motion following the witness's testimony because the recording had not been transcribed, it was of poor quality, and it would confuse the jury in the absence of a transcript. On appeal, defendant changes his theory of admissibility, asserting for the first time that the tape demonstrates his remarks preceding his arrest did not frighten Deputy Pastore.

The trial court is vested with broad discretion in ruling on the admissibility of relevant evidence. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125 (*Rodrigues*).) We agree with defendant that the tape, whether admitted to demonstrate defendant did not make the threats or that the threats did not frighten Deputy Pastore, was certainly relevant. We disagree, however, that the trial court abused its discretion. Moreover, any possible error in excluding the tape was harmless beyond a reasonable doubt.

The court can exclude relevant evidence that may unduly confuse the jury. (*Rodrigues*, *supra*, 8 Cal.4th at pp. 1124-1125.) In this case, defendant failed to have the tape transcribed to assist the jury in understanding what was being said on the tape. By all accounts, the tape was of very poor quality. Thus, we cannot say the court abused its discretion by refusing to admit a recording that most certainly would have confused some, if not all, of the jurors.

But more importantly, the tape was of minuscule, if any, significance. Defendant argues that the tape would have impeached Deputy Pastore's testimony that his threats frightened her. But Deputy Pastore was just one of at least five witnesses who described the content of the threats as well as the menacing manner in which defendant peppered

4

his threats with an almost endless stream of obscenities. One neighbor, accustomed to boisterous behavior by bar patrons, called the police because defendant's antics were so unnerving. She testified she was so traumatized she vomited.

One of the construction workers corroborated her testimony. He too described how defendant tried to instigate trouble. He testified, "[Defendant] just kind of, just called me like a white piece of trash, get your ass down here SAP, and pacing back and forth with clenched fists, looking for trouble." He later explained that defendant was ready to start a fight; he was "[j]ust looking at me like, with a flared punch, [you] know, his punch, like with the intent to punch me."

This worker specifically described defendant's verbal assaults of the officers, particularly Deputy Pastore, this way: "It was just constant, constant, constant. [A]nd to her, the female officer, he says: I fuck you. I fuck you in all your holes. I will fuck you, you know, anything he could say. Those were actually words to her, but it continued, sexual conduct with her. And then fat and chubby and all of the other stuff with the other guy [police officer]."

Deputy Pastore and the other two officers reiterated the same accounts to the jury. Every witness confirmed that defendant had hurled threats at the officers and was belligerent in both tone and manner. Yet defendant insists that Deputy Pastore's calm voice on the tape undercuts her testimony that she was afraid. We disagree. As the Attorney General points out, Deputy Pastore did not start recording her encounter with defendant until after the reinforcements had arrived. Just because she might have been able to regain her composure once she received adequate support does not mean she had not been afraid at the time the threats were made. As a trained police officer, moreover, she might have been able to project a calm and commanding tone in her voice at odds with her internal emotional state of fear.

We conclude the court's exclusion of the tape was harmless under any standard because the evidence that defendant threatened Deputy Pastore is overwhelming. We

also reject any suggestion that defendant's counsel provided inadequate representation. In the absence of prejudice, defendant has failed to meet his burden of demonstrating he was denied his constitutional right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674].)

## II.

Defendant's *Pitchess* motion sought to discover the personnel records of Officers Boyd, Rust, and Pastore necessary "to prove the tendency of the officers to harass citizens, make material fabrications, and conduct unlawful detentions, searches, seizures, and arrests." The trial court ordered the Sierra County Sheriff's Office to provide it with the personnel records as requested. Following an in camera review of the records, the trial court found one discoverable item and disclosed a citizen complaint lodged against one of the officers on March 13, 2012, for excessive force. Defendant requests this court to review the personnel records examined by the trial court to determine whether the trial court abused its discretion by refusing to disclose any other documents in the officers' files. The Attorney General concurs in the propriety of the request.

We have conducted an independent review of the three officers' personnel records and conclude the trial court did not erroneously withhold any documents. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 646-648.) Defendant has failed to demonstrate an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

                                                        _____RAYE_____, P. J.

We concur:

_____ROBIE_____, J.

_____MURRAY_____, J.