Filed 4/28/15  P. v. Guess CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075465 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F02353) |
| v. | |
| MICHAEL GUESS, | |
| Defendant and Appellant. | |

A jury convicted defendant Michael Guess of the unlawful possession of marijuana in state prison.  (Pen. Code, § 4573.6.)[1]  In bifurcated proceedings, the jury found a strike prior—a 2005 lewd/lascivious act on child under 14 (§§ 667, subds. (b)-(i), 1170.12)—and a prior prison term (§ 667.5, subd. (b)) to be true.

---

[1] Undesignated statutory references are to the Penal Code.

1

The trial court imposed the midterm of three years, doubled for the strike prior, to be served consecutively to defendant's current state prison commitment. The court imposed but stayed a one-year term for the prior prison term.

Defendant appeals and raises two contentions. He first contends that the trial court erred in denying his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) without conducting an in camera hearing, requiring remand. The People respond that the trial court did not abuse its discretion. We reject defendant's contention as frivolous. The trial court conducted an in camera hearing on defendant's *renewed Pitchess* motion.

Defendant also contends that the trial court erred in excluding or limiting the proposed testimony of several defense inmate witnesses. We conclude the trial court did not abuse its discretion and shall affirm the judgment.

## FACTUAL BACKGROUND

About noon on December 28, 2010, at Folsom State Prison, Department of Corrections and Rehabilitation (CDCR) Correctional Officer Bradley Bick planned to conduct a cell search on 5-B tier and had the water shut off so that the inmates could not flush contraband down the toilets. As Bick walked down the tier, Correctional Officer Christopher Kaysinger followed him on the gun rail carrying a 40-millimeter launcher that fired nonlethal hard foam bullets—to stop fights among other things. Bick walked past defendant's cell and smelled the odor of burning marijuana. The lights were off in defendant's cell. Defendant was the only inmate in his cell. Bick motioned to Kaysinger as if he was smoking something and pointed to defendant's cell. Bick returned to defendant's cell. Defendant was listening to music and dancing. Bick opened defendant's cell door and ordered defendant to step out for a cell search. Defendant looked at Bick, grabbed something from the top bunk, and ran behind a privacy sheet which covered the toilet and sink in the back of the cell. Bick called an alarm in the tier,

2

pulled out his pepper spray, and ordered defendant out of his cell and to lie down. Defendant refused to comply and moved around behind the sheet. Several officers responded to the alarm and defendant failed to respond to orders that he exit his cell and lie down. Kaysinger fired four foam rounds into defendant's cell. Two shots hit the privacy sheet, a third shot hit defendant in the right buttock, and the fourth round missed defendant. Defendant still refused to comply with orders. Correctional Officer Nicholas Austin sprayed defendant's cell with pepper spray but defendant continued to refuse to comply with orders. Correctional Officer Maynard Acierto fired one foam round but it hit the bars on the cell. Austin sprayed pepper spray at defendant who got down on the floor of his cell. Defendant was pulled out, handcuffed and taken to a holding cell. Nothing was found on his person but a cavity search was not conducted.

One officer who helped escort defendant to the holding cell did not smell marijuana on defendant while another officer could not recall whether defendant smelled of marijuana. Correctional Officers Austin and Acierto did not see smoke or smell marijuana. Correctional Officer Kaysinger claimed that he smelled marijuana "all the time in the building." Austin may have seen marijuana in the cell after defendant was removed but his vision was obscured by the pepper spray he had used. A urine test on defendant was not conducted. Correctional Officer Bick had prior encounters with defendant.

Correctional Officer Russell Snyder conducted the investigation of the incident and searched defendant's cell. Snyder found marijuana on the floor near the toilet and in the toilet bowl. Snyder collected 2.4 grams of wet marijuana, 0.5 grams being a usable amount, but did not find any burned marijuana, matches, lighter, smoking pipe or rolling papers. A lab test on the then dried marijuana reflected a weight of 0.56 grams.

Defense counsel opted not to call any defense witnesses, resting on the prosecution's case.

3

## DISCUSSION

### I. *Pitchess* Motion

Defendant contends the trial court denied his *Pitchess* motion without conducting an in camera hearing regarding disclosure of the personnel files of Correctional Officers Snyder and Bick, requiring remand for an in camera hearing. (*Pitchess*, *supra*, 11 Cal.3d 531.) The People respond that the trial court did not abuse its discretion in concluding that defendant failed to make the showing of good cause for the discovery or disclosure sought.

Both defendant and the People have failed to read the record carefully. An in camera hearing was conducted.

In January 2012, a judge denied defendant's initial *Pitchess* motion for the personnel records of Correctional Officers Bick and Snyder, finding that defendant had made an insufficient showing. In April 2012, defendant renewed his *Pitchess* motion for the personnel records of both officers based on statements from inmate witnesses. On May 30, 2012, Judge Marjorie Koller granted an in camera hearing and limited it only to complaints that the officers provided false information or planted evidence. Judge Koller conducted an in camera hearing with CDCR Custodian of Records Heather Dockter who "was sworn [and] testified."[2] The minute order of the proceedings reflects that defendant's attorney was present as was defendant, and that Attorney Loren Dieu was present on behalf of CDCR. The minute order further reflects that "[n]o records for [Correctional] Officer Bick were found." With respect to Correctional Officer Snyder, the court signed a protective order (which is included in the record on appeal) concerning the use of the records and other information ordered disclosed, including that such "shall

---

[2] The minute order reflects that the court ordered the "transcripts of the in camera [hearing] sealed." The record on appeal does not include the transcript of the in camera hearing held on May 30, 2012.

be used for no purpose other than to prove defendant's theory of defense in the instant action."

Remand for an in camera hearing is not required. We reject defendant's contention as frivolous.

## II.  Testimony of Defense Witnesses

Defendant also contends that the trial court thwarted his defense by excluding or severely limiting the testimony of several defense witnesses, all fellow inmates, who would have supported his defense that Correctional Officers Bick and Snyder falsified the report concerning defendant's possession of marijuana and planted the evidence to cover the fact that they used excessive force in extracting defendant from his cell.

The People respond that the trial court did not abuse its discretion in excluding or limiting the testimony of the proposed inmate witnesses because certain testimony was not based on personal knowledge but instead on rumor, hearsay, and speculation, and was irrelevant, and/or inadmissible under Evidence Code section 352 (consumed too much time, confused the issues, and misled the jury).

Defendant argues, "the admission of evidence issue is inextricably linked to the *Pitchess* issue because had trial counsel been given any reports of misconduct which corroborated the inmate information, there would have been no threat of 'mini' trials or of rumor and speculation" and "[t]rial counsel would have had what it need[ed] to 'substantiate' at least some of the inmate accounts and impeach the state's case."

To the extent the exclusion/limitation of the testimony is "inextricably linked to the *Pitchess* issue," we reject it. The *Pitchess* issue was resolved by an in camera hearing. According to the minute order, there were no records concerning Correctional Officer Bick. Defense counsel was given records and information with respect to Correctional Officer Snyder and, according to the protective order, such disclosure was to

5

be used by defense counsel to prove defendant's defense at trial. At trial, defense counsel opted to call no witnesses for the defense. To the extent the exclusion/limitation of testimony is not linked to the *Pitchess* issue, we conclude that defendant has failed to demonstrate that the trial court abused its discretion.

"Relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' (Evid. Code, § 210.) The trial court has broad latitude in determining the relevance of evidence. [Citations.] We review such determinations for abuse of discretion. [Citations.] . . . [¶] . . . [¶] A trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. (Evid. Code, § 352; [citation].) . . . [¶] On appeal, we review the trial court's rulings on the admissibility of evidence for abuse of discretion." (*People v. Scott* (2011) 52 Cal.4th 452, 490-491.)

Prior to trial, defense counsel sought to introduce the testimony of 10 inmate witnesses, some of whom defendant claimed were percipient witnesses while others were character witnesses as to the honesty of Correctional Officers Bick and Snyder. Defense counsel attached the statements of Darnell Williams, Liyon O'Quin, Marvin Bowens, Clark Bryant, George Warren, Calvin Patterson, Steven Stowers, Elliot Rogers, Robert McDaniels, and Delian Brewer.

At a hearing, defense counsel argued the interactions with the officers and knowledge of their reputation allowed the inmates to testify concerning the officers' character. The trial court considered and ruled on the admissibility of each inmate witness's proposed testimony.

Defendant argues the court's exclusions and limitations on the testimony of the proposed witnesses "left [defendant] with only four potential witnesses" (Bowen, Patterson, O'Quin, and Warren), each of whom would have been allowed to testify about

6

their observations of the offense involving defendant but not allowed to testify about the prior bad acts, character or reputation of Correctional Officers Bick or Snyder or their statements about the incident report or their opinions about the use of force. Defendant argues the excluded testimony was crucial to his theory of defense that Bick and Snyder had lied and planted evidence. Defendant claims each of the witnesses had "information which would have both impeached the credibility of Officers Bick and Snyder and supported [defendant's] defense that Bick 'had it out for him,' Bick and Snyder had falsified reports in the past and had reputations for falsifying reports, excessive force was used, and that the evidence against [defendant] had indeed been planted."

We consider each statement in turn, the trial court's ruling, and defendant's contention, and conclude as follows.

Inmate O'Quin lived in cell 7 on the same tier as defendant when the incident occurred. According to O'Quin, he was standing 15 to 20 feet away from defendant's cell when Correctional Officer Bick opened defendant's cell door and told defendant to step out before pepper spraying the cell. A few seconds later, Correctional Officer Kaysinger, the gunner on the gun rail, shot his block gun four times into defendant's cell. Another gunner shot one round into defendant's cell. Officers pulled defendant out of his cell and handcuffed him. Defendant was "taken to a cage." O'Quin did not hear defendant say anything during the incident. O'Quin could not see what defendant was doing in his cell but O'Quin believed defendant posed no threat. After the incident, the lieutenant talked to the officers about "how they were going to write this up." O'Quin complained that Correctional Officer Kaysinger was "known to look for trouble" and was "quick to shoot."

Defense counsel withdrew that portion of O'Quin's statement concerning Correctional Officer Kaysinger. The trial court also found that those statements were inadmissible. The trial court ruled O'Quin would be permitted to testify concerning his

7

own observations but would not be allowed to testify concerning his conclusion of excessive force or about overhearing an unidentified lieutenant talking to the officers about how they were going to write up the incident report.[3]

The trial court properly ruled that O'Quin could testify about what he observed. He had personal knowledge of the incident. (Evid. Code, § 702, subd. (a).) The trial court also properly ruled that O'Quin did not have personal knowledge about excessive force because he could not see inside defendant's cell and admitted he did not know what defendant was doing. As far as overhearing the conversation about preparation of a report, the trial court properly ruled that since O'Quin heard only part of the conversation (did not state the response or the context), did not identify the lieutenant, and it was thus unreliable. Moreover, Evidence Code section 352 barred admissibility since it would confuse the issues and/or mislead the jury.

Inmate Bowens stated that he was in "cell 3" and defendant was in "cell 5" when the incident occurred. He heard an officer claim he smelled marijuana and that they were going to search defendant's cell. Bowens heard officers tell defendant to get down and the gunner shot three or four times. Bowens coughed from the pepper spray. Bowens claimed he did not smell any marijuana and that he would have if there was any. Bowens

_____

[3] Defense counsel withdrew Williams as a proposed witness. Inmate Williams claimed he was seven to eight feet away from defendant's cell when Correctional Officer Bick walked by defendant's cell, stepped back to look inside defendant's cell, and then told defendant twice to step out. Bick then told everyone to close their cell doors. Williams claimed he watched with a mirror sticking out of his cell. He saw Bick hit defendant's cell door bars with his baton but did not see him pepper spray the cell. Williams claimed at least 10 officers appeared and the gunner started shooting. An officer pepper sprayed the cell just before the gunner started shooting. A gunner shot at least six times. Defendant never said anything. Defense counsel noted that Williams had since been paroled and was doing well in an inpatient residential rehabilitation program. Since the trial court ruled O'Quin's observations were admissible, defense counsel decided Williams's testimony would not be necessary.

did not hear defendant during the incident. Bowens did not believe the officers found marijuana. The officers tore up defendant's mattress and pillow. Bowens helped clean up defendant's cell by sweeping after they took defendant away. Bowens claimed the officers dragged defendant away, handcuffed, gagging and coughing. Bowens claimed he overheard the sergeant ask an officer "how they were going to write the report." An officer responded that he would " 'put something together' " and "they would fix it." Bowens never had any problems with any of the officers but claimed Correctional Officer Bick was known for "foul play," having heard "guys say [Bick] falsifies reports when he searches."

The trial court concluded that Bowens's statements that Correctional Officer Bick was known for foul play and falsified reports, and his belief that no marijuana was found in defendant's cell, were inadmissible conclusions. The trial court ruled that Bowens would be allowed to testify about what he observed. The trial court properly ruled Bowens could testify as a percipient witness (about what he observed). The trial court also properly excluded Bowens's statements about his beliefs since they were based on hearsay (Evid. Code, § 1200) or speculation, not his personal knowledge.

As far as what Bowens overheard concerning the preparation of the incident report, defense counsel asked for a hearing to "fully flush out the issue." The trial court agreed. The trial court later confirmed its rulings and a hearing was still available concerning what Bowens overheard but as it stood, without additional information about falsifying the report, the trial court ruled Bowens's claim about what he overheard was excluded under Evidence Code section 352. The trial court properly ruled since such testimony would have confused the issues, misled the jury and/or consumed too much time.

Inmate Bryant stated that he was not present when the officers searched defendant's cell. Bryant claimed that he had an incident with Correctional Officer Bick

9

the previous year. Bick searched his cell and said he found a cell phone. According to Bryant, Bick's "report was bogus." Bryant was not present during the search but instead was working in the kitchen. Bryant had a note from his supervisor. Bryant claimed his cellmate was eating in the chow hall. According to Bryant, Bick stated that he "got confused."

The trial court noted that Bryant did not offer any opinion of reputation of Correctional Officer Bick and related only a single incident. The trial court stated that the incident required a "minitrial" as to the circumstances and was excluded under Evidence Code section 352. We find no abuse. A minitrial of the circumstances related to the incident with the cell phone and Bick's report about the same would have consumed too much time, confused the issues, and/or misled the jury.

Inmate Warren stated that he was not present when defendant's cell was searched. Warren claimed that in July 2010 and in June or July 2011, Correctional Officer Bick charged him with having a cell phone. According to Warren, Bick "lied" and "falsified the reports" because Bick did not get the cell phone from him. Warren claimed he had a meeting with "the lieutenant" who "weighed the evidence and the report and he knew it wasn't accurate," dismissing the charges. Warren stated, "Like the Bick will say he searched a room because he saw a lot of activity at that cell. The 1st tier officer told the truth . . . that it didn't happen that way and they dismissed it." As for the second incident, Warren stated that Bick claimed he saw "pictures of [Warren] on the phone but there weren't any there so the lieutenant dismissed the charges." Warren also stated: "Bick will put in any detail to do what he wants. Bick has had lots of complaints even sexual harassment complaints. He is a corrupt cop and everyone knows that is true." Warren claimed Bick was "known for lying." Warren also claimed Bick assumed that inmates did things. Bick had snitches and harassed people. Warren stated, "Everyone knows

10

Bick has it out for [defendant]," "[p]eople were complaining on him" and "doing 602's (complaints)," and Bick "puts people in danger."

The trial court determined that Warren "offer[ed] opinions" which may or may not be relevant and depended on the basis for his conclusions. The court stated that it was unable to determine whether a "minitrial" would be required without Warren testifying at an Evidence Code section 402 hearing to facilitate the Evidence Code section 352 analysis. Defense counsel elected to keep Warren on his witness list. Defendant never presented additional information concerning Warren for the court to make a determination. Defendant's claim on appeal concerning Warren is forfeited.

Inmate Patterson stated that he was defendant's cellmate but was not present at the time of the search. When he returned to the cell, he found "food thrown all over and they had busted up our stuff." He heard that officers had shot five times, charged defendant with possession of marijuana, and dragged defendant from the cell after they pepper sprayed him. Patterson claimed that Correctional Officers Bick and Kaysinger were "asshole[s]." According to Patterson, Bick held grudges and had snitches. Patterson stated that if an inmate refused to snitch, Bick "pick[ed] on you." Patterson claimed defendant did not have any marijuana and was not a snitch. Patterson thought the officers picked on defendant because he refused to snitch and was "a little guy." Patterson also claimed that Bick was "not an upstanding officer."

The trial court ruled Patterson would be allowed to testify that he was defendant's cellmate but was not present at the time of the search, and that they did not have and he never saw defendant possess marijuana. The trial court determined Patterson's statements concerning Correctional Officer Bick were unsubstantiated opinions, inadmissible character evidence, and irrelevant. The trial court properly excluded Patterson's statements concerning Bick since the same were not evidence of honesty or veracity.

11

Inmate Stowers stated that he worked with defendant in the kitchen.  Stowers heard about defendant's cell search but did not see it because he was on a different tier and there was too much smoke from the pepper spray.  Stowers claimed that in July 2011, he had an incident with Correctional Officer Bick who went to Stowers's cell to search for a cell phone.  Stowers claimed he gave the cell phone to Bick.  Stowers claimed Bick stated in his report that he searched Stowers's cell and found the cell phone on the bed.  Stowers claimed he made Bick change the report.  According to Stowers, Bick stated that he wrote " 'blanket reports' " and then signed them.  When a cell phone is found in a cell, there should be a cell search slip.  Stowers claimed he would have been in trouble if Bick had found the phone in the search and that there was no cell search slip.  Stowers further claimed that based on a rumor, Bick had lots of snitches whom he allowed to keep their phones or gave them radios taken from other cells.  Stowers stated that he knew that the lieutenant reprimanded Bick for the report he prepared on the July incident with Stowers and that Stowers thought it was because Bick falsified the report.  Bick was "always in trouble."  According to Stowers, Bick had "lots of inmates beat[en] up," including " 'Toot,' " who got assaulted because Bick gave his radio to someone.  Stowers claimed that Bick never left " 'cell search slips,' " that he was a dirty cop and "friends with the warden so no one does anything."

The trial court excluded Stowers's statements as irrelevant, noting "[e]very critical aspect of what is illegal about what the inmate is doing is confirmed by the inmate."  The trial court properly ruled that Stowers unlawfully had a cell phone in his cell, conflicting with his accusation of a *false* report.  The trial court properly found the rest of Stowers's statements to be irrelevant as unsubstantiated and unreliable conclusions.  The trial court properly found the only portion admissible would be that Stowers heard shots fired but even then Evidence Code section 352 applied (cumulative) since it was not likely an issue with several officers testifying about the same.

12

Inmate Rogers stated that in February 2010, Correctional Officer Snyder searched his cell based on an anonymous tip and found 35 grams of marijuana. Rogers claimed he was ultimately not charged with possession of the marijuana because he is a "lifer" but his cellmate Robert McDaniels was charged. Rogers believed another inmate whose name he did not know had planted the marijuana in a container of Top Ramen which Rogers had received in exchange for a $2 cigarette. Rogers accused Snyder of lying in the incident report. At a hearing, Snyder testified over the telephone and Rogers and his cellmate lost. Rogers believed Snyder was out to get him because he (Rogers) was reportedly a drug dealer. Rogers claimed he had heard Snyder lies in reports. Rogers stated, "There are a few CO's with bad reputations; Sn[y]der, Critz and Bick are three of them. Bick is actually worse than Sn[y]der. I've heard he may be involved with bringing cell phones in and setting people up then saying some home boy snitched. He has caused lots of fights in here. He is dangerous. He doesn't have his snitch's back and no one in here likes a snitch." Rogers also stated, "If you ask 1000 inmates they will all tell you Bick is new with less than five years on and he does lots of write ups. He has been moved from his post by a sergeant an[d] then after a different sergeant came in they put him back out. He is putting people's lives in jeopardy. He throws his snitches under the bus. He doesn't do things by the book."

The trial court properly concluded Rogers's statements were not relevant and were inadmissible character evidence. The incident of Correctional Officer Snyder finding marijuana in Rogers's cell bolstered Snyder's credibility. Thus, Rogers did not support his conclusion that Snyder lied or was dishonest. The trial court properly found Rogers's statements of what he heard about Snyder without any basis were not reliable and were based on rumor rather than personal knowledge. The trial court properly found Rogers's conclusions about Correctional Officer Bick were "even more speculative." The trial court also properly determined that Evidence Code section 352 barred Rogers's

13

testimony since it would have consumed too much time, confused the issues, and/or misled the jury.

Inmate McDaniels stated that he was housed in the same unit as defendant. McDaniels had no issue with Correctional Officer Bick but the rumor was he violated people when he conducted strip searches, "he rubs his finger up their butt." According to McDaniels, Bick was "known to be a bad cop." McDaniels claimed that based on a tip from a snitch, Correctional Officer Snyder searched his cell and found marijuana. As a result, McDaniels received an additional 180 days as discipline based on the large quantity. At the hearing, McDaniels claimed Snyder refused to answer questions and was vague about "how he got his information." McDaniels stated that he was found guilty of distribution, had filed a writ in superior court, and was in the process of filing one in the appellate court. However, McDaniels also claimed he did not have a large quantity and the prosecutor did not file charges. McDaniels stated that Snyder was known to enter cells and fail to leave a cell search slip, did not work by CDCR guidelines or rules, and always took things from cells. McDaniels claimed Snyder had been harassing defendant.

With respect to Correctional Officer Bick, the trial court properly concluded McDaniels did not have personal knowledge—"rumor, that's not admissible." With respect to Correctional Officer Snyder, the trial court noted McDaniels's statements were inconsistent with the defense position that he was a character witness against Snyder. The trial court properly ruled. The allegation of possession of marijuana against McDaniels appears to have been substantiated and McDaniels's complaints were based on unreliable hearsay and speculation. The trial court also reasonably concluded that any minimal relevance was "largely outweighed by the time consumption and confusion of facts."

Inmate Brewer knew defendant from the prison yard. Correctional Officer Bick searched Brewer's cell one time the previous year, "tore up the cell" but did not find

14

anything, and did not write it up. According to Brewer, Bick was "always searching [defendant's] room," and "ha[d] it out for [defendant]." Brewer claimed Bick terrorized the building with his snitches and searches.

The trial court properly determined Brewer's statements were not relevant and even any minimal relevance was inadmissible under Evidence Code section 352. The one incident of Correctional Officer Bick's searching Brewer's cell and finding nothing did not demonstrate dishonest conduct and was contrary to defendant's defense that Bick planted evidence. Brewer's claim that Bick singled defendant out for cell searches was not substantiated and his claim Bick had snitches was irrelevant.

Defendant has failed to demonstrate that the trial court abused its discretion in excluding/limiting the defense's proposed inmate witness testimony.

## DISPOSITION

The judgment is affirmed.

                                             _____BUTZ_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____NICHOLSON_____, J.

15