Filed 6/9/25  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100500 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE006486) |
| v. | |
| ROBERT ANTHONY TAYLOR, | |
| Defendant and Appellant. | |

While driving under the influence of alcohol and marijuana, defendant Robert Anthony Taylor hit a bicyclist, severely injuring him, and left the scene of the accident. After pleading guilty to one count of misdemeanor driving on a suspended license, a jury found him guilty of one felony count of hit and run causing permanent injury and two misdemeanor counts of driving under the influence.  On the first day of trial when jury selection was set to commence, defense counsel orally informed the trial court that Taylor

1

wished to request mental health diversion for the hit and run offense under Penal Code[1] section 1001.36. Taylor did not file a written motion requesting diversion or otherwise submit evidence showing he was eligible or suitable for diversion. The trial court denied his oral request, concluding it would be unfair to grant him diversion for the felony hit and run offense, which would cause his associated arrest record to be sealed, when that same arrest resulted in the two charged driving under the influence offenses, which were not eligible for diversion.

On appeal, Taylor argues the trial court erred when it denied him an opportunity to apply for mental health diversion based on the procedural reasons related to sealing the arrest record. The People agree the trial court erred, but they contend Taylor has forfeited his claim because he never actually applied for mental health diversion, or, alternatively, that he cannot show prejudice because he never established he was eligible for diversion.

We conclude the trial court erred in determining it could not grant diversion based on the procedural reason related to sealing Taylor's arrest record. However, Taylor has not shown the error prejudiced him because nothing in the record establishes he was eligible for mental health diversion. We therefore affirm.

FACTUAL AND PROCEDURAL HISTORY

*The Hit and Run Accident*

Around 6:00 p.m. one evening in January 2022, a Lyft driver in Sacramento saw someone driving a car with a smashed windshield while dragging something metal that she believed to be a bicycle. The Lyft driver called 911. A responding officer found bicyclist H.B. lying in the gutter in a pool of blood being treated by emergency personnel.[2] The officer located a Cadillac emblem, a license plate frame, and a license

---

[1]   Further undesignated statutory references are to the Penal Code.

[2]   H.B., who was transient, could not be located at the time of trial.

plate nearby. Department of Motor Vehicle records showed that the license plate matched a 2008 Cadillac with a release of liability to Taylor.

Around 11:00 p.m. that same evening, officers detained Taylor after he drove a Cadillac onto a median and got it stuck about a mile from where H.B. was found. The Cadillac had major damage to its windshield and roof that was consistent with a bike collision, and the license plate matched the plate found near H.B. earlier in the day.

Taylor told the officer (and later testified at trial)[3] that he thought he had hit a deer before becoming stuck on the median; he denied being in any collision earlier that evening. However, given the extensive damage to Taylor's car and the lack of a debris field where the car was located, the officer believed the collision did not occur near the median. Taylor exhibited objective signs of impairment or intoxication, but he refused to perform field sobriety tests or submit to a blood draw. After obtaining a warrant, Taylor's blood alcohol concentration was determined to be 0.165 percent; applying established extrapolation principles, Taylor's blood alcohol concentration would have been around 0.213 percent at the time he was detained.

At trial, Taylor admitted having a few drinks and smoking marijuana the day of the accident, and he claimed he had not had anything to drink from the time of the accident (around 6:00 p.m.) to the time police arrived after high centering his car on the median (around 11:00 p.m.). He claimed he did not know what he hit when his windshield exploded, and because he was scared, he did not stop to check.

### The Charges and Trial Proceedings

Taylor was charged in an amended information with four counts: (1) felony hit and run causing permanent injury (Veh. Code, § 20001, subd. (b)(2); count one), (2) misdemeanor driving under the influence (Veh. Code, § 23152, subd. (a); count two),

---

[3] During his testimony, Taylor admitted having two prior convictions for crimes of moral turpitude.

(3) misdemeanor driving under the influence with a blood alcohol content above .08 percent (Veh. Code, § 23152, subd. (b); count three), and (4) misdemeanor driving while his license was suspended due to a prior driving under the influence conviction (Veh. Code, § 14601.2, subd. (a); count four).

For counts two and three, it was alleged that Taylor had one prior conviction for driving under the influence within 10 years (Veh. Code, §§ 23546, 23548, 23550), that at the time of the current offense, he drove with a blood alcohol content of .15 percent or higher (Veh. Code, § 23578), and that he refused to submit to a chemical test (Veh. Code, § 23577). The amended information also alleged a prior strike conviction based on a 2018 conviction for involuntary manslaughter with use of a weapon (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), and alleged multiple factors in aggravation (Cal. Rules of Court, rule 4.421(a)(1) & (b)(1)-(5)).

Taylor was arraigned in June 2022. Throughout the proceedings, Taylor vacillated between representing himself under *Faretta*[4] and having appointed counsel represent him. While representing himself, Taylor filed numerous written motions, including over 10 motions seeking to have the charges dismissed,[5] which the trial court denied. Neither Taylor nor his appointed counsel filed a written motion for mental health diversion under section 1001.36.

---

[4] *Faretta v. California* (1975) 422 U.S. 806.

[5] Taylor filed two nonstatutory motions to dismiss, three motions to set aside the information or indictment (§ 995) multiple discovery motions under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 for law enforcement personnel files, and motions to dismiss for violation of the rights to a speedy preliminary hearing, to a speedy filing of the accusatory information, and to a continuous preliminary hearing (§§ 859b, 739, 861). Taylor also filed motions to dismiss for failure to disclose exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83 and vindictive prosecution, to change venue, and multiple motions to dismiss his appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118.

Trial was originally set in July 2023. During the pretrial conference on July 13, 2023, Taylor pled guilty to count four (misdemeanor driving on a suspended license with a prior driving under the influence conviction), and the remaining counts were to be tried to a jury, with the prior strike and aggravating circumstance allegations bifurcated for a court trial. The next day, on the eve of trial, Taylor requested the appointment of counsel. The court appointed counsel for Taylor and continued the trial.

In August 2023, appointed counsel declared a doubt as to Taylor's competency under section 1368 and criminal proceedings were suspended. Dr. Kari Glenn evaluated Taylor in September 2023, and she recommended that he be found competent to stand trial.

While evaluating Taylor, Dr. Glenn did not observe any symptoms of a mental disorder, and she opined that antipsychotic medication was not appropriate because Taylor did not present with any psychiatric symptoms. Dr. Glenn noted, however, that Taylor had "endorsed anxiety and depression related to his case, and [was] currently prescribed antidepressant medication." When Taylor was taken into custody at the jail, he had requested antidepressant medication and he was prescribed antidepressants Prozac and Trazodone, which he took daily. Besides stress and anxiety related to his current custodial situation, Taylor denied experiencing all other psychiatric symptoms. Based on Dr. Glenn's own behavioral observations during the interview as well as records she had reviewed, Taylor exhibited linear and coherent thinking with an absence of psychotic symptoms such as hearing voices or seeing things, or delusional symptoms such as fixed false beliefs or excessive fears. She believed Taylor's expressed concerns about the district attorney and his appointed counsel were "likely reflective of maladaptive personality traits rather than a severe mental illness."

According to Dr. Glenn, Taylor's symptoms appeared consistent with an adjustment disorder with mixed anxiety and depressed mood and Taylor more likely met the criteria for an unspecified personality disorder. Such a diagnosis was sometimes

given when there was insufficient information to determine whether an individual met the full criteria for any of the disorders in the personality disorders diagnostic class in the Diagnostic and Statistical Manual of Mental Health Disorders-Fifth Edition. Taylor denied any behavioral problems as a child, reported an extensive work history, and reported he was recently married. He denied having a substance abuse problem and reported that his prior driving under the influence-related arrests were due to racial profiling. He reported having a stroke in 2008, but denied a history of seizures, head injuries, or other medical ailments that would impact his competency. He stated he had signed himself into a hospital 20 or 30 years prior (Taylor was 62 years old at the time of the evaluation); he was evaluated under Welfare and Institutions Code section 5250, but was released after the evaluation and did not stay for more than 24 hours.

In October 2023, the parties submitted on Dr. Glenn's report, the trial court found Taylor competent to stand trial, and the court reinstated criminal proceedings. Trial was reset for January 2024.

At a pretrial conference on Thursday, January 18, 2024, the trial court considered motions in limine. Taylor made no motion seeking mental health diversion at that time. Taylor again requested to represent himself, but the court denied the motion, finding that Taylor was attempting to delay the trial.

***Request for Mental Health Diversion***

On Monday, January 22, 2024, jury selection was set to commence. Immediately before bringing in the prospective jurors for voir dire, defense counsel stated on the record that he had e-mailed the court the previous Friday (January 19) about the issue of mental health diversion. According to counsel, he had introduced the idea of mental health diversion to Taylor earlier that day, and "[Taylor] has requested mental health diversion as of Friday." Counsel's e-mail to the court is not included in the record. Defense counsel suggested that Taylor could plead guilty to the two misdemeanor driving

under the influence charges, which were not eligible for diversion, and then do mental health diversion for the felony hit and run charge, which was eligible.

The prosecution opposed the request, arguing Taylor was engaging in gamesmanship to delay trial yet again. According to the prosecution, nothing showed Taylor had a diagnosis that would make him eligible or suitable for diversion and the prosecution had no information regarding the status of any purported application for diversion.

Defense counsel stated Taylor had informed him he took several medications for anxiety, and Taylor then interjected that he was also on social security for mental health. After the trial court noted Taylor had waited over a year and a half to raise the issue of mental health diversion, defense counsel explained that because Taylor would not talk to him and their attorney-client relationship had been "tumultuous at best," they had only recently had a meaningful conversation where counsel raised the idea of mental health diversion with Taylor. Taylor had told counsel that he did not think he was qualified, but he said he would have been interested in pursuing mental health diversion had it been offered earlier.

While the trial court found it disconcerting that Taylor raised the issue for the first time right before jury selection, the court did not believe the request for mental health diversion was an act of gamesmanship. The court also found the request was not untimely because jeopardy had not yet attached. However, the court found it problematic that Taylor could plead to multiple ineligible offenses and obtain mental health diversion on the one eligible offense because diversion would result in sealing the records related to the arrest underlying all the offenses. In the court's view, the prosecution would then unfairly be prohibited from alleging the prior ineligible offenses in subsequent prosecutions because the arrest record would be sealed. The court therefore denied the request on procedural grounds.

7

Defense counsel immediately asked the court to reconsider, reiterating that Taylor said he was on social security based on a mental health issue and claimed to have depression. For the first time, Taylor also claimed he had schizophrenia. The court declined to reconsider its ruling. At no time did defense counsel request a continuance to file a written application for mental health diversion or ask to further brief the procedural issue related to sealing the arrest record that concerned the court. The parties then picked a jury and tried the case.

***The Verdicts and Sentencing***

The jury found Taylor guilty of counts one through three (felony hit and run causing permanent injury and two misdemeanor counts of driving under the influence) and found the attached allegations true. In a subsequent court trial, the trial court found the prior conviction allegations and each of the six alleged aggravating factors true.

In a presentence interview with the probation officer, Taylor denied having any mental health issues and described himself as being in excellent health. The trial court sentenced Taylor to the upper term of four years for the felony hit and run offense, which was doubled to eight years due to his prior strike conviction. The court imposed no additional time for the misdemeanors in counts two and three. Taylor timely appealed.

## DISCUSSION

### I

### *Mental Health Diversion*

When defense counsel first orally raised the issue of mental health diversion in January 2024 immediately before jury selection, section 1001.36 gave trial courts discretion to grant pretrial diversion to a defendant who satisfies certain eligibility requirements and who the court determined was suitable for diversion based on

enumerated statutory factors.[6] (§§ 1001.36, subds. (a)-(c), 1001.36, subd. (f)(1) [" '[p]retrial diversion' " is "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment"]; see also *People v. Brown* (2024) 101 Cal.App.5th 113, 117.)

Under the statute, a defendant who has not been charged with a disqualifying offense such as murder, voluntary manslaughter. or certain sexual offenses (§ 1001.36, subd. (d)) is *eligible* for pretrial diversion if both of the following criteria are met: (1) the defendant has been diagnosed with a qualifying mental disorder; and (2) the defendant's mental disorder was a significant factor in committing the charged offense. (§ 1001.36, subd. (b)(1)-(2).) A qualifying mental disorder is one that is identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or posttraumatic stress disorder, but does not include antisocial personality disorder and pedophilia. (§ 1001.36, subd. (b)(1).)

A defendant bears the burden of providing evidence of his or her mental disorder, and such evidence must include "a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (§ 1001.36, subd. (b)(1).) "In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (*Ibid.*)

---

[6] Section 1001.36 has since been amended, effective January 1, 2025, with changes not pertinent to the issues on appeal. (Stats. 2024, ch. 647, § 1.5.) For simplicity, and because the relevant provisions of the statute have not changed, this opinion cites to the current version of section 1001.36.

If a defendant has been diagnosed with a mental disorder, the court must find the mental disorder was a "significant factor" in committing the offense unless clear and convincing evidence shows it "was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).) In making this determination, a court may consider "any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (*Ibid.*)

If a defendant satisfies both eligibility requirements, the court must then consider whether the defendant is *suitable* for pretrial diversion. (§ 1001.36, subd. (c).) As relevant here, to be deemed suitable for diversion, each of the following criteria must be met: (1) in the opinion of a qualified mental health expert, the defendant's mental disorder symptoms that caused, contributed, or motivated the defendant's criminal behavior would respond to mental health treatment; (2) the defendant consents to diversion and waives his or her speedy trial rights; (3) the defendant agrees to comply with treatment as a condition of diversion; and (4) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (c)(1)-(4).)

If a defendant is granted diversion and performs satisfactorily, at the end of the diversion period (no longer than two years for felony charges), the trial court shall dismiss the criminal charges pending at the time of the initial diversion. (§ 1001.36, subds. (f)(1)(C)(i), (h).)

II

*Analysis*

The parties agree, as do we, that the trial court mistakenly believed granting diversion would prevent the prosecution from accessing and using Taylor's arrest record in the event Taylor subsequently committed or was charged with future offenses. As Taylor correctly notes, the diversion statute's plain language expressly includes exceptions to the restrictions on accessing an arrest record following diversion. (§ 1001.36, subd. (h).)

When a trial court dismisses charges after an individual successfully completes diversion, "the arrest upon which the diversion was based shall be deemed never to have occurred, and the court shall order access to the record of the arrest restricted in accordance with Section 1001.9, except as specified in subdivisions (j) and (k)." (§ 1001.36, subd. (h).) Under subdivision (j), even if a defendant completes diversion, "[a]n order to seal records pertaining to an arrest made pursuant to this section has no effect on a criminal justice agency's ability to access and use those sealed records and information regarding sealed arrests, as described in Section 851.92." (§ 1001.36, subd. (j)(2).)

Section 851.92 (which applies when an arrest record is sealed pursuant to § 1001.9), provides, in relevant part, that "[a]rrest records, police investigative reports, and court records that are sealed under this section shall not be disclosed to any person or entity *except* . . . a criminal justice agency," which includes a district attorney. (§ 851.92, subds. (b)(5), (d)(4)(C), italics added; Stats. 2024, ch. 539, § 1.) Furthermore, "[n]otwithstanding the sealing of an arrest," in the regular course of its duties, a criminal justice agency may continue to access and use, including by discussing in open court and in unsealed court filings, "sealed arrests, sealed arrest records, sealed police investigative reports, sealed court records, and information relating to sealed arrests, to the same extent that would have been permitted for a criminal justice agency if the arrest had not been

11

sealed." (§ 851.92, subd. (b)(6).) Thus, contrary to the trial court's conclusion, the prosecution would still have been able to access the arrest record related to all of Taylor's charges even if Taylor successfully completed diversion for the only eligible offense (felony hit and run). (Veh. Code, § 23640; *Tellez v. Superior Court* (2020) 56 Cal.App.5th 439, 445 [driving under the influence offenses are categorically ineligible for mental health diversion].)

Although the trial court's procedural rationale for denying diversion was erroneous, the People contend Taylor's claim that he was wrongfully denied mental health diversion is not preserved for review because he never actually applied for diversion. Alternatively, they contend that even if he did apply, he cannot show prejudice because he never established he was eligible for diversion. We agree with the latter argument, but not the former.

While it is true that the record does not contain a written motion for mental health diversion, defense counsel did e-mail the court and the prosecutor the day following the hearing on the motions in limine (Friday) to inform them that he had discussed mental health diversion with Taylor and Taylor wanted to request diversion. At the next court date (Monday), defense counsel orally stated that "[Taylor] has requested mental health diversion as of Friday." Thus, although Taylor did not submit any written materials to support his request, we cannot say Taylor did not "apply" for diversion before jeopardy attached. (*People v. Braden* (2023) 14 Cal.5th 791, 805 [to be timely, a request for pretrial diversion must be made before jeopardy attaches at trial or the entry of a guilty or no contest plea, whichever occurs first].)

Satisfying his burden to show he was eligible for diversion, however, is another matter. (*People v. Braden*, *supra*, 14 Cal.5th at p. 814 ["competent defendants are capable of, and required to, request diversion, consent to it, demonstrate their eligibility, waive the right to a speedy trial, and agree to comply with treatment"]; § 1001.36, subd. (c)(2), (3).) Section 1001.36, subdivision (b)(1) expressly placed the burden on Taylor to

12

provide *evidence* in support of his diversion request, including evidence establishing the existence of a mental health disorder. The record is devoid of any such evidence.

Taylor's claim that the trial court's ruling came before Taylor had the opportunity to develop or present evidence to support his diversion application is not well taken. Taylor was arraigned in June 2022 and criminal proceedings had been ongoing for a year and a half by the time Taylor requested diversion in January 2024. Throughout the proceedings, Taylor filed a deluge of pro. per. motions to dismiss on various grounds as well as numerous *Marsden* and *Faretta* motions. Taylor easily could have submitted evidence to support a request for pretrial diversion during this time, but he did not.

Taylor, moreover, could have, but did not, request a continuance to produce such evidence after counsel had raised the diversion issue. "[A] trial court generally is under no obligation to continue a matter for the defense in the absence of a request." (*People v. Beames* (2007) 40 Cal.4th 907, 923.) Because Taylor did not seek a continuance below, we have no occasion to decide whether the trial court would have erred in denying such a request had it been made. (*People v. Alcala* (1992) 4 Cal.4th 742, 782.)

In any event, defense counsel conceded at the hearing that Taylor did not believe he qualified for relief. Ample evidence in the record supports Taylor's belief.

For example, Dr. Glenn evaluated Taylor's competency in September 2023—four months before the jury trial in January 2024—and *did not observe any symptoms of a mental disorder*. In fact, she opined that antipsychotic medication was inappropriate because Taylor did not present with any psychiatric symptoms. Taylor's conduct during the interview with Dr. Glenn, as well as his records[7] Dr. Glenn reviewed prior to the evaluation, showed he had linear and coherent thinking, did not hear voices or see things, and did not have delusional symptoms such as fixed false beliefs or excessive fears.

---

[7] Dr. Glenn reviewed the arrest report and supplemental arrest report, the felony complaint, Taylor's "RAP sheet," and 52-pages of correctional health services records.

Taylor himself denied experiencing psychiatric symptoms. While Taylor did request medication for anxiety and depression when he was first taken into custody, Dr. Glenn found his anxiety and depression were related to his feelings about his current custodial situation and not to any mental health disorder. In addition, Dr. Glenn opined that Taylor's expressed concerns regarding the district attorney and his appointed counsel were "likely reflective of maladaptive personality traits rather than a severe mental illness." Given the above, the record contains no evidence that Taylor was eligible for diversion because he had a qualifying mental disorder, and, in fact, contains evidence to the contrary. (See, e.g., § 1001.36, subd. (b)(1) [expressly excluding antisocial personality disorder as a qualifying mental disorder].)

Taylor's unsworn statement to counsel during the hearing that he had schizophrenia does not compel a different result. First, Taylor's statement is contrary to Dr. Glenn's observations of Taylor during the competency evaluation. And it expressly contradicts Taylor's own statement to the probation officer denying that he had any mental health issues. Second, Taylor made no offer of proof to support the statement, including identifying the doctor who supposedly made the diagnosis and when the diagnosis was made.

But even if we assume, for the sake of argument, that Taylor's lone, unsupported statement during the hearing that he had schizophrenia was sufficient to find he had a qualifying mental disorder (§ 1001.36, subd. (b)(1)), we believe the record contains clear and convincing evidence that the disorder was not a motivating, causal, or contributing factor in committing the offense—the additional prerequisite that is necessary to establish eligibility. (§ 1001.36, subd. (b)(2).)

Taylor admitted drinking alcohol and smoking marijuana before getting the "munchies" and driving to buy himself a hamburger. While eating the hamburger and driving under the influence, Taylor hit H.B. from behind on his bike and left the scene because he was scared. Hours later, when he was arrested, Taylor still exhibited objective

14

signs of intoxication, including watery eyes, slurred speech, an unsteady gait, and the odor of alcohol.  Tellingly, there was *no* evidence that Taylor exhibited any signs of auditory or visual hallucinations at the time of the accident, or that he was otherwise suffering from some sort of schizophrenic episode either when he hit H.B. or when he was arrested hours later.  Indeed, when the responding officer asked him whether he had any medical conditions, Taylor never mentioned having schizophrenia.[8]  (Cf. *People v. Frahs* (2020) 9 Cal.5th 618, 624-625 [a defendant who stole two beverages from a convenience store and threw rocks at passing cars testified at trial that he had a long history of hallucinations and delusions, that he had stopped taking his medication for schizoaffective disorder days before the incident, and that he thought an angel flew by on a horse and talked to him just before he entered the store]; *People v. Braden*, *supra*, 14 Cal.5th at p. 800 [officer responding to domestic dispute informed that the defendant, who had kicked and choked his mother, was schizophrenic with a history of violence].)

Based on the record before us, we cannot say that the court's error in denying the request on improper procedural grounds was prejudicial.  (*People v. Banner* (2022) 77 Cal.App.5th 226, 235 [" 'The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a "miscarriage of justice" ' "].)  It is not reasonably probable the result would have been more favorable to Taylor but for the court's error.  (*Ibid.*)  The evidence does not show Taylor suffered from a qualifying mental disorder, or, even if he did, that the disorder caused or motivated the criminal conduct here.  The court, therefore, did not err in denying diversion.

---

[8]     Taylor told the officer that he had previously had a stroke.  Taylor confirmed the same to Dr. Glenn during the competency evaluation, reporting that he had had a stroke in 2008 but denying a history of seizures, head injuries, or other medical ailments that would impact his competency.

# DISPOSITION

The judgment is affirmed.

                                        /s/
                                    EARL, P. J.

We concur:

        /s/
    RENNER, J.

        /s/
    FEINBERG, J.

16